## EASTERN GAS & FUEL ASSOCIATES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3732.

Circuit Court of Appeals, First Circuit.

May 29, 1942.

John E. McClure, of Washington, D. C. (Maude Ellen White and Miller & Chevalier, all of Washington, D. C., and J. Rex Dibble and Miller, Chevalier, Peeler & Wilson, all of Los Angeles, Cal., on the brief), for petitioner.

Samuel H. Levy, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, A. F. Prescott, and Joseph M. Jones, Sp. Assts. to Atty. Gen., J. P. Wenchel, Chief Counsel, and Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

In this petition for review the taxpayer has appealed from a decision of the Board

of Tax Appeals which sustained a determination of the Commissioner of Internal Revenue disallowing as deductions in the petitioner's income tax returns for the years 1934, 1935 and 1936, certain amounts paid as taxes to the Commonwealth of Massachusetts. The principal issue which confronts us is whether these amounts are deductible under the applicable provisions of the Revenue Acts of 1934 and 1936, namely Sections 23(a), (c) and (d).[1] 48 Stat. 680 (1934); 49 Stat. 1648 (1936) 26 U.S.C.A. Int.Rev.Acts, pages 671, 827, § 23(a, c, d).

The petitioner, Eastern Gas and Fuel Associates, was organized on July 18, 1929, under the laws of the Commonwealth of Massachusetts and had as one of its objects the acquisition of the preferred and common shares of the Massachusetts Gas Companies, Connecticut Coke Company and Philadelphia Coke Company. The Massachusetts Gas Companies, a voluntary association, was organized on September 25, 1902. Under the Massachusetts' income tax law, Gen.Laws Mass.1921, Ch. 62, Section 1,[2] provision was made for the taxation at 6% of dividends on transferable shares in partnerships, associations or trusts. An exception was made if the partnership, association or trust furnished proof that at least two-thirds of its property was taxed within the Commonwealth and filed an agreement to pay the Commonwealth annually a tax of 6% of the income derived from its property.

In compliance with this law the Massachusetts Gas Companies furnished the required proof that at least two-thirds of its property was taxable within the Commonwealth and filed an agreement to pay the annual tax of 6% of its income. In accordance with the agreement which was in force from 1916 throughout 1929, the Massachusetts Gas Companies paid the tax to the Commonwealth of Massachusetts. The petitioner never filed such an agreement and never paid such a tax.

---

[1] "§ 23. In computing net income there shall be allowed as deductions:

"(a) Expenses. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"(c) Taxes Generally. Taxes paid or accrued within the taxable year, except * * *.

"(d) Taxes of Shareholder Paid by Corporation. The deduction for taxes allowed by subsection (c) shall be allowed to a corporation in the case of taxes imposed upon a shareholder of the corporation upon his interest as shareholder which are paid by the corporation without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes."

[2] "Section 1. Income of the classes described in subsections (a), (b), (c) and (e) received by any inhabitant of the commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum.

* * * * * *

"(c) Dividends, other than stock dividends paid in new stock of the partnership, association or trust issuing the same, on shares in partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, except dividends on shares of the following:

* * * * * *

"Second, Partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, which file such agreement and furnish satisfactory proof to the commissioner that two thirds, at least, of their taxable property is taxed within the commonwealth and that the remainder, if taxable, is taxed where situated.

"(d) Partnerships, associations or trusts, the dividends on shares of which are exempt from taxation under this section, shall pay to the commissioner annually a tax of six per cent of the income derived from their property, so far as such income would be taxable under this section if received by an inhabitant of the commonwealth.

"(e) Dividends on shares of any partnership, association or trust, of the classes designated in paragraphs first and second of subsection (c), shall be subject to taxation under this section unless the trustees or managers thereof file with the commissioner, in such form as he determines, its agreement to pay to the commonwealth annually the tax imposed by subsection (d) and any tax imposed by section five. In case of any breach of the terms of any such agreement, the same may be enforced by information in equity brought by the attorney general at the relation of the commissioner in the supreme judicial court for Suffolk county. This remedy shall be in addition to all other means of collection provided by this chapter, and to the penalties hereinafter imposed."

The petitioner in its declaration of trust provided in part:

"Article 23. C. This trust will, out of the balance of the net profits or surplus remaining after all dividends accrued on the Prior Preference to the preceding quarterly dividend day have been paid or declared and set aside for payment, refund to each holder of Prior Preference, or arrange for the payment of, any Massachusetts income tax in respect of dividends on the Prior Preference received by such holder, to an amount not exceeding six per cent (6%) of such dividends, or refund or arrange for the payment of any personal property tax of the Commonwealth of Pennsylvania or any municipality or sub-division thereof in respect of the ownership of Prior Preference, not exceeding four (4) mills on each dollar of taxable value of Prior Preference held by such holder (all such refunding or payment as well as any similar refunding or payment hereinafter or in votes or resolutions of the Trustees provided in respect of the Preferred Stock, being in this Article 23 referred to as 'reimbursement for taxes') —all in such manner and under such regulations as the Trustees may from time to time prescribe.

*    *    *    *    *

"Article 23. I. Holders of Preferred shall be entitled pro rata out of the balance of the net profits or surplus remaining after all dividends accrued on the Preferred to the preceding quarterly dividend day have been paid or declared and set aside for payment to such reimbursement for taxes, if any, as may have been established for the particular series in such manner and under such regulations as the Trustees may from time to time prescribe."

On August 6, 1929, the Board of Trustees by resolution established a series of preferred stock known as 6% cumulative preferred stock, a part of which reads as follows:

"(b) Reimbursement for taxes shall be by refunding to each holder of Preferred, or arranging for the payment of, any Massachusetts income tax in respect of dividends on the Preferred received by such holder, to an amount not exceeding six per cent (6%) of such dividends, or by refunding or arranging for the payment of any personal property tax of the Commonwealth of Pennsylvania or any municipality or subdivision thereof in respect of the ownership of Preferred, not exceeding four

(4) mills on each dollar of taxable value of Preferred held by such holder, such reimbursement for taxes to be made in such manner and under such regulations as the Trustees may from time to time prescribe."

Thereafter, on August 14, 1929, the petitioner sent to the holders of the common and preferred shares of Massachusetts Gas Companies a prospectus in which it made the following offer:

"Eastern Gas and Fuel Associates will reimburse Massachusetts holders of the Prior Preference and the 6% Cumulative Preferred Stocks for any Massachusetts income taxes paid with respect to any dividends thereon up to but not exceeding 6%. In the absence of any request to the contrary Eastern Gas and Fuel Associates will pay the Massachusetts income taxes on dividends of these stocks so that dividends to Massachusetts holders will be free of tax in that respect."

The petitioner took up with the Commissioner of Corporations and Taxation of the Commonwealth of Massachusetts the matter of paying the tax imposed by Section 1, Chapter 62, supra, and an agreement was entered into whereby Old Colony Trust Company, of Boston, would act as trustee to pay the tax on the dividends received by the inhabitants of Massachusetts from the petitioner. On December 4, 1929, the petitioner addressed a letter to the Commissioner of Corporations and Taxation setting forth the arrangement whereby the Old Colony Trust Company, as trustee, under the agreement of December 3, 1929, was to pay the taxes on the dividends and this agreement was approved by the Commissioner of Corporations and Taxation.

In 1934, 1935 and 1936, taxes imposed by the Commonwealth of Massachusetts on the dividends of the holders of petitioner's preferred shares residing in Massachusetts and subject to such tax, were paid in the sums of $101,926.52, $99,801.13 and $95,-926.38, respectively. The petitioner claimed these amounts as deductions in its income tax returns for the respective years as taxes paid to the Commonwealth of Massachusetts. These deductions were disallowed by the Commissioner and his action was affirmed by the Board of Tax Appeals. The petitioner made the alternative contention before the Board that if the sums in question were properly disallowed as deductions, the respondent erred in understating the adjusted declared value of its capital stock

for excess profits tax purposes for the years in question. The petitioner does not rely upon this alternative contention in its brief and we give it no further consideration.

The Board decided that the amounts herein in question are not deductible as ordinary and necessary business expenses within the meaning of Section 23(a) for the reason that the payments made as taxes to the Commonwealth of Massachusetts upon the dividends received by the shareholders of the petitioner came from earnings or profits. No contrary contention was made by the petitioner as to the source of these payments. The Board concluded that since such payments are within the statutory definition of a dividend, 26 U.S.C.A. Int.Rev. Code, § 115 [3] (Internal Revenue Acts 1934, 1936) therefore, "it is immaterial whether the shareholder could have required payment if there had been no earnings or profits".

We agree with the Board that the Commissioner properly disallowed the claimed deductions on the ground that the payments made were added dividends but we cannot assent to its reasoning. In our opinion the question whether payments are made out of net earnings or surplus is not decisive of the issue. The controlling question is, was the payment of these taxes an enforceable obligation against the petitioner which had to be paid in any event regardless of the existence of surplus or net profits, or was the payment a part of the dividend structure of the petitioner. Cf. Wiggin Terminals, Inc., v. United States, 1 Cir., 1929, 36 F.2d 893, 896, 898. There is no disagreement as to the facts before us and since a determination of the issue depends upon the construction of documentary evidence, we are free to disregard the reasoning of the Board and place our own interpretation upon the evidence in question. United States v. South Georgia Railway Co., 5 Cir., 1939, 107 F.2d 3.

The petitioner makes the contention that it could not have obtained the consent of the shareholders of the Massachusetts Gas Companies to exchange their stock for its shares unless it had promised them that it would pay their taxes. Further, it contends that this was a promise entirely separate

from the trust indenture, which provides for the payment of taxes upon the dividends, and, since this was an annual charge which had to be paid in order to acquire and maintain the income producing property, it, therefore, was a necessary and ordinary business expense. The cases cited in support of this position assume the question in issue because enforceable obligations were found to exist in them. They are not controlling unless the petitioner can establish that the offer in question created an obligation on its part to make the payments of the taxes regardless of whether it had earnings or profits.

In Buffalo Eagle Mines, Inc., v. Commissioner, 37 B.T.A. 843, the taxpayer acquired coal property in exchange for certain stock and an agreement to pay ten cents a gross ton upon all the coal produced. A contention was made that these payments were dividends and, therefore, not deductible as ordinary and necessary business expenses. The Board found that the payment of ten cents per ton was a fixed charge upon production regardless of whether there were earnings or profits.

Commissioner v. Palmer, Stacy-Merrill, Inc., 9 Cir., 1940, 111 F.2d 809, is another case cited by petitioner. General Fruit Company reached an agreement with its competitors whereby it agreed to cause a new corporation to be organized having six per cent $100 par preferred stock and no par common stock. The competitors agreed to transfer their properties to the new corporation in return for the preferred stock of the new corporation. The taxpayer agreed to redeem and retire the preferred shares within a definite time and to pay dividends upon such stock in accordance with an agreement entered into by the General Fruit Company and its competitors. The court treated the agreements as definite obligations to retire the preferred stock regardless of whether there were earnings or profits. It looked at the substance rather than the form of the transaction and concluded that the preferred stock in reality evidenced a debt and that the so-called dividends were deductible as interest.

There are a number of cases in which the courts concern themselves with the

[3] "§ 115. Distributions by corporations

"(a) *Definition of dividend.* The term 'dividend' * * * means any distribution made by a corporation to its shareholders, * * * out of its earnings or profits accumulated after February 28, 1913."

analogous question of whether the payment of certain sums is interest or dividends. In reaching the conclusion that it is the one or the other the issue is whether a creditor-debtor or stockholder-corporation relationship is created. Here, we are not confronted with the problem in the first instance whether the preferred shares represent true preferred shares. However, we are faced with the question whether the added payment of taxes represents an indebtedness or obligation or whether it is part of the dividend structure of the corporation. Insofar as the cases dealing with the question of interest or dividends point the way for a determination of this question, they are in point. As was stated by Judge Hutcheson in United States v. South Georgia Railway Co., supra, 107 F.2d at page 6:

"They all agree that the question for decision in each case is, not what the payments are called, but what in fact, they are, and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called."

In the following cases the courts held that the payments made to shareholders were dividends: Bakers' Mutual Co-operative Ass'n of Newark N. J., v. Commissioner, 3 Cir., 1941, 117 F.2d 27; Dayton & Michigan R. Co. v. Commissioner, 4 Cir., 1940, 112 F.2d 627; Commissioner v. Schmoll Fils Associated, 2 Cir., 1940, 110 F.2d 611; Finance & Investment Corporation v. Burnet, 1932, 61 App.D.C. 78, 57 F.2d 444.

The cases which reach the conclusion that the payments are interest and not dividends are decided on the ground that there is an enforceable obligation on the part of the taxpayer which must be met regardless of whether there are earnings or profits. In Helvering v. Richmond, F. & P. R. Co., 4 Cir., 1937, 90 F.2d 971, the taxpayer sought a deduction on account of the so-called guaranteed dividends paid during the tax year on certain guaranteed stock which constituted a lien on the taxpayer's assets, both with respect to the principal amount of the stock and the guaranteed dividends. The court, in affirming the Board's decision which treated the guaranteed dividends as deductible interest, said at page 974 of 90 F.2d:

"In the case at bar, not only does the guaranteed stock rank prior to the interest of general creditors, but also prior to the interest of other secured creditors. The so-called guaranteed dividends are debts to be paid when due, whether there are net earnings out of which they may be paid or not; * * *". Commissioner v. Proctor Shop, Inc., 9 Cir., 1936, 82 F.2d 792; Commissioner v. National Grange Mutual Liability Co., 1 Cir., 1935, 80 F.2d 316; Wiggin Terminals, Inc. v. United States, supra.

It will be observed from the cases cited that the dominating question in determining whether payments are interest or dividends is whether on the basis of all the facts a conclusion may justifiably be reached that the obligation in question is one which must be met at all events as a matter of contract, or whether it is to be payable only out of surplus or net profits. The tests which aid the courts in reaching a conclusion that payments constitute interest and not dividends are not precisely the same which determine the issue in this case. In those cases the courts inquire whether the preferred shares are to be retired at a particular date and whether upon dissolution preferred shareholders take precedence over the general creditors of the taxpayer. We are not interested in these particular tests because, as was stated, we have a stockholder-corporation relationship. We are, nevertheless, aided by those decisions because the ultimate question which determines whether a payment is a dividend or interest is decisive in the determination whether a payment is a dividend or a necessary and ordinary business expense. See Commissioner v. Schmoll Fils Associated, supra, 110 F.2d page 614.

In the case before us the trust indenture provides that the payment of taxes on the dividends is to be made out of surplus or net profits. There is nothing in the prospectus which would indicate a different source from which the payment of the taxes is to be made. The offer merely provides for the payment of a tax on the preferred stock or for the reimbursement of taxes paid by the shareholders. We have before us not an isolated offer but rather an offer made in relation to a trust indenture which in the first instance creates the petitioner and provides for a stockholder-cor-

poration relationship. Reading the prospectus in the light of the trust indenture, and we think it must be so read, it becomes clear that the payment of the tax is to be made as indicated in the trust indenture and that the source of the payment of the tax is the surplus or net profits of the petitioner.

The receipt of dividends is a right which the preferred shareholders have in the distribution of surplus or net profits. The promise in this case is a promise to the shareholders that they will receive their share of the distribution of the surplus and net profits free from the payment of taxes. If there are no net profits the shareholders receive, of course, no dividends and no taxes are paid. If there are some profits, the preferred shareholders receive only their proportionate share of the amount that the corporation distributes as dividends, and they have no enforceable right against the corporation for the difference between the amount to which they would be entitled if there were sufficient earnings to declare the full dividend and the amount which they received. With this shareholder-corporation relationship in mind, it seems hardly reasonable to assume that while the payment of dividends is not guaranteed, there is a separate and distinct obligation on the part of the corporation to pay a tax on dividends even though it means an impairment of the capital assets of the corporation. We cannot make this assumption from the mere fact that the offer provides for the payment of taxes upon dividends received by the shareholder, of the petitioner.

■ We, therefore, conclude that the sums paid as taxes upon the dividends are not deductible as ordinary and necessary business expenses.

■ The petitioner contends that the amounts herein in question are deductible as taxes under Section 23(c) but we are constrained to conclude that there is no merit in its position. Section 23(c) provides for a deduction only if the tax is imposed upon the person seeking such deduction. Here, the petitioner was under no obligation to pay the taxes and never filed an agreement pursuant to Chapter 62, Sec. 1, supra. The argument made by petitioner that the effect of the payment of the taxes under its arrangement with the Old Colony Trust Company, as Trustee, is the same as the filing of an agreement in accordance with the statutory requirement is untenable. Formerly, the taxes were imposed directly upon the Massachusetts Gas Companies under the applicable Massachusetts law whereas under the present arrangement petitioner was not obligated to pay the tax but voluntarily shifted the burden from the shareholders to it. Wood et al. v. Rasquin, D.C., 21 F.Supp. 211, affirmed per curiam, 2 Cir., 1938, 97 F.2d 1023; Falk Corporation v. Commissioner, 7 Cir., 1932, 60 F.2d 204, 205; 3 Paul & Mertens, Law of Federal Income Taxation (1934) § 25.07.

■■ The petitioner makes the further argument that it is entitled to a deduction for the taxes paid by it under Section 23(d). Section 23(d) allows a deduction to a corporation in the case of taxes "imposed upon a shareholder of the corporation *upon his interest as shareholder* which are paid by the corporation without reimbursement from the shareholder * * *". (Italics supplied.) It is clear from the regulations that the use of the term "interest" relates to a tax upon the ownership of stock and not to the income derived therefrom. Art. 23(d), Regulations 86, 1934; 3 Paul & Mertons, supra, §§ 25.28, 25.30. We are satisfied that this is the correct interpretation of Section 23(d). Sections 23(c) and 23(d) are, therefore, inapplicable to the case before us and we conclude as did the Board of Tax Appeals, that there is no merit in the contention of the petitioner that either of these sections may be used as a basis for allowing a deduction of the taxes in question.

The decision of the Board of Tax Appeals is affirmed.