Madden, Judge,
delivered the opinion of the court:
The plaintiff sues to recover a part of the Federal income and excess profits taxes which it paid for the years 1941 and 1942. The ground for its suit is that it was entitled to, but has been denied, deductions, in the amount of $387,436.55, from its taxable income for those years. The claimed deductions are the amounts which the plaintiff paid to the State of Wisconsin in the years 1941 and 1942 as “Privilege Dividend Taxes” imposed by a Wisconsin statute.
The state statute imposed a tax of a fixed percentage of the amount of dividends declared and paid by corporations, “for the privilege of declaring and receiving dividends, out of income derived from property located and business transacted” in Wisconsin. The statute said “Every such corporation hereby made liable for such tax shall deduct the amount of such tax from the dividends so declared.”
The Wisconsin statute was enacted in 1935. The plaintiff, and some other corporations, took the position that it was in violation of the Constitution of the United States and was therefore invalid. The plaintiff did not file the returns or pay the taxes stipulated in the statute until the Supreme Court of the United States, in the case of Wisconsin v. J. C. Penney Co., 311 U.S. 435, decided December 16, 1940, held the statute constitutional. Thereafter the plaintiff in the years 1941 and 1942 accrued on its books the taxes which it claims it was entitled to deduct from its income for those years.
*368 The plaintiff relies on subsections (a), (c) and (d) of section 23 of the Internal Eevenue Code of 1939, 26 U.S.C. (1952 ed.) §23 (a), (c) and (d). We quote so much of section 23 as is relevant:
SEO. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
(a) Expenses.
(1) Trade or Business Expenses.
(A) In General — All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * *
5j« ífi ifc ifc ♦
(c) Taxes Generally.
(1) Allowance in General. — Taxes paid or accrued within the taxable year, except * * *
$ ‡ ‡ $
(d) Taxes of Shareholder Paid by Corporation. — The deduction for taxes allowed by subsection (c) shall be allowed to a corporation in the case of taxes imposed upon a shareholder of the corporation upon his interest as shareholder which are paid by the corporation without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes.
We first consider subsection (d). Its language seems to fit the plaintiff’s situation exactly. The Government argues that the legislative history of subsection (d) shows that Congress, when enacting it, did not have in mind a situation such as the one present in the plaintiff’s case.
The provision was first enacted in section 234(a) (3) of the Eevenue Act of 1921, c. 136, 42 Stat. 227. Prior to this statute it had been held that banks were not entitled to a deduction for state taxes paid upon shares of stock in the banks, though the taxes were collected from the banks and the banks did not require the stockholders to reimburse them. See, e.g. Eliot National Bank v. Gill, 218 Fed. 600 (C.C.A. 1); National Bamk of Commerce v. Allen, 223 Fed. 472 (C.C.A. 8). See Senate Hearings on Internal Revenue (Sept. 1- *369 October 1, 1921, pp. 250-251.) (Confidential Committee Print, subsequently released for publication).
Senate Report No. 275, 67th Cong., 1st Sess. at p. 19, [1939-1 Cum. Bull, (part 2) 181, 194] reporting the 1921 bill to the Senate, contained the following statement:
Section 234 authorizes corporations to take deductions similar to those accorded individuals by the terms of section 214, with the following provisions applicable only to corporations : (1) Corporations (particularly banks) are permitted to deduct certain taxes paid by them for or on behalf of their shareholders or members; * * *.
Treasury Regulations 62, promulgated under the Revenue Act of 1921, provided in Article 566:
Under the Revenue Act of 1921 banks or other corporations paying taxes assessed against their stockholders on acGownt of their ownership of the shares of stock issued by such corporations, without reimbursement from such shareholder or member, may deduct the amount of taxes so paid. (Emphasis supplied.)
This regulation is now section 19.23(d)-l of Treasury Regulations 103, promulgated under the Internal Revenue Code of 1939.
The Government concedes that the language of section 23(d) is broad enough to include a tax imposed upon a shareholder on account of his privilege of receiving dividends. It says, however, that the regulation, in effect for so many years, has narrowed the statute so that it covers only property taxes imposed upon the shareholders’ ownership of the stock. We first inquire whether the regulation means to restrict the scope of the statute.
One does not receive dividends from a corporation, nor have the privilege of receiving dividends, unless he owns some stock. The tax is payable by him because of, i.e., “on account of”, his ownership of the shares and the consequent ownership of the right to receive dividends.
There is strong internal evidence in the regulations themselves that the variation of language between the statute and the regulations was an inadvertence. Section 214(a) (3) (d) of the 1921 statute, 42 Stat. 227, 239-240, was the provision that an individual was not entitled to deduct “taxes imposed *370 upon the taxpayer upon his interest as shareholder * * * which are paid by the corporation without reimbursement from the taxpayer.” This was, of course, the exact wording of section 234(a) (3) of the 1921 Revenue Act [section 23 (d) ’s predecessor] allowing the corporation to deduct those taxes which could not be deducted by the shareholder. While, as we have seen above, the regulation based on section 234 (a) (3) changed the statutory language, Article 135 of Treasury Regulations 62, based on section 214(a) (3) (d) of the 1921 Act, repeated the statutory language without change, stating that an individual might not deduct “the taxes imposed upon his interest as shareholder * * * which are paid by the corporation without reimbursement from the taxpayer.” We can see no reason, other than inadvertence, why the regulation based on section 234(a) (3), permitting the corporation to take the deduction, should have varied from the statutory language, while the regulation based on section 214(a) (3) (d), denying the deduction to the stockholder, repeated the statutory language exactly. These were complementary statutory provisions, and an intent on the part of the Treasury to provide, as the Government’s argument would have it, a different scope for the corporation’s deduction allowed than for the shareholder’s deduction denied would be impossible to rationalize.
Although section 23 (d) dates back to 1921, the parties have cited only one court decision interpreting it, viz., Eastern Gas and Fuel Associates v. Commissioner, 128 F. 2d 369, (C.C.A. 1). In that case the Court said, of section 23(d):
It is clear from the regulations that the use of the term “interest” relates to a tax upon the ownership of stock and not to the income derived therefrom. 128 F. 2d, 375.
With deference, we think it is by no means clear from the regulations that the Treasury had the intent to restrict the effect of the statute or that, if for some reason not disclosed to us, it had such an intent, it used language which expressed that intent. We conclude that the plaintiff has a valid claim under section 23(d).
As we have said, the plaintiff also relies on subsection (a) of section 23 asserting that its payment of the tax was an “ordinary and necessary” business expense. As shown in *371 finding 23 (b) the plaintiff had more than 300,000 shareholders. Because the tax was imposed only upon the income attributable to the plaintiff’s business in Wisconsin, which was a small part of its total income, the amount deductible from the quarterly dividend check of a majority of the plaintiff’s shareholders would have been less than one cent, and as to many shareholders it would have been less than one-half a cent. It was economically wise for the plaintiff to absorb the cost of this tax rather than to pay several times the amount of the tax to get it computed and recorded accurately for each shareholder. See Baltimore Steam Packet Co. v. United States, 148 Ct. Cl. 699; Canton Cotton Mills v. United States, 119 Ct. Cl. 24, 94 F. Supp. 561 (1951). It may be observed that if the plaintiff had undergone the expense of subtracting the tax from the shareholders’ dividends, that expense would have been an “ordinary and necessary” and therefore deductible expense, and the Federal Government would have borne a large share of it because it would have reduced the plaintiff’s income and excess profits taxes.
What we have said about section 23(a) may not be valid as to the relatively small part of the claimed deduction which was accrued by the plaintiff in the year 1942. As to that year there is a question as to the adequacy of the claim for refund as originally filed. We do not consider nor decide that question, nor the question of the plaintiff’s right to recover under subsection (c) of section 23.
The plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Buie 38(c).
It is so ordered.
Durfee, Judge; Laramore, Judge; and Jones, Chief Judge, concur.
Whitaker, Judge, took no part in the consideration and decision of this case.
FINDINGS OP PACT
The court, having considered the evidence, the report of Trial Commissioner Mastin G. White, and the briefs and argument of counsel, makes findings of fact as follows:

*372
The Plaintiff

1. The plaintiff, General Motors Corporation, is — and at all times material to this case it was — a corporation organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in the city of Detroit, Michigan. It is engaged principally in the manufacture and sale of mechanical, electrical, and other products.
2. At all times material to this case, the plaintiff was— and it still is — engaged in business in most of the States of the United States, including the State of Wisconsin.

Wisconsin Privilege Dividend Tax

3. The deduction sought in this litigation is for amounts aggregating $387,436.55 which were assessed against and collected from the plaintiff by the State of Wisconsin as taxes imposed under the Wisconsin privilege dividend tax statute with respect to dividends declared and paid by the plaintiff on its outstanding common and preferred stock during the period from September 26, 1935, to December 31, 1942, inclusive.
4. (a) The privilege dividend tax statute of the State of Wisconsin was originally enacted on September 25, 1935 (Wisconsin Laws of 1935, c. 505, sec. 3). As amended on October 7,1935 (Wisconsin Laws of 1935, c. 552), the statute provided as follows:
SECTION 3. PRIVILEGE DIVIDEND TAX. (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to two and one-half per centum of the amount of such dividends declared and paid by all corporations (foreign and local) after the passage and publication of this act and prior to July 1, 1937. Such tax shall be deducted and withheld from such dividends payable to residents and nonresidents by the payor corporation.
(2) Every corporation required to deduct and withhold any tax under this section shall, on or before the last day of the month following the payment of the dividend, make return thereof and pay the tax to the tax commission, reporting such tax on the forms to be prescribed by the tax commission.
*373 (3) Every such, corporation hereby made liable for such tax, shall deduct the amount of such tax from the dividends so declared.
(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If !a corporation had a loss for the year prior to the payment of the dividend, the tax commission shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits derived from business transacted and property located within the state.
(5) Dividends paid by a subsidiary corporation to its parent shall not be subject to the tax herein imposed provided that the subsidiary and its parent report their income for taxation under the provisions of chapter 71 on a consolidated income return basis, or both corporations report separately.
(6) The provisions of this section shall not apply to dividends declared and paid by a Wisconsin corporation out of its income which it has reported for taxation under the provisions of chapter 71, to the extent that the business of such corporation consists in the receipt of dividends from which a privilege dividend tax has been deducted and withheld and the distribution thereof to its stockholders.
(7) For the purposes of this section dividends shall be defined as in section 71.02, except that the tax herein imposed shall not apply to stock dividend or liquidating dividends.
(8) The tax hereby levied, if not paid within the time herein provided, shall become delinquent and when delinquent shall be subject to a penalty of two percent on the amount of the tax and interest at the rate of one-half percent per month until paid.
(9) The tax hereby imposed shall, when collected by the tax commission, be paid by it into the state treasury.
(b) The expiration date of the Wisconsin privilege dividend tax statute was extended from time to time, until the statute finally lapsed in 1951.
*374 (c) In 1937, an amendment added the following paragraph to the Wisconsin privilege dividend tax statute:[1]
(10) Except as they are inconsistent with this section, the provisions of paragraph (b) of subsection (3) of section 71.06, sections 71.10 to 71.17, inclusive, subsection (3) of section 71.18, and sections 71.36 and 71.37 of the statutes shall apply to the tax imposed by this section, but the discount provisions of paragraph (c) of subsection (3) of section 71.10 shall not apply.
This additional paragraph made certain of the administrative provisions of the Wisconsin income tax act applicable to the privilege dividend tax, effective June 14,1937.
(d) The Wisconsin privilege dividend tax statute was amended in 1939 by increasing the tax rate from 2y2 percent to 3 percent, effective July 1,1939.[2]
5. The “Instructions” under the Wisconsin privilege dividend tax statute, as contained on the form of return originally prescribed by the State of Wisconsin, were as follows:
1. Corporations doing business within and without Wisconsin.
a. Allocate dividends on the basis of the same ratio that Wisconsin income bore to total income for the year immediately preceding the payment of such dividend.
b. If dividends are allocated (due to previous year’s loss or other reason) on the basis of the current year’s income, or on the basis of the portion of surplus and undivided profits derived from business transacted and property located in Wisconsin, detailed schedules showing computation must be attached hereto.
2. Wisconsin Corporations.
In computing tax, there must be eliminated from total dividends paid such portion as was paid out of income derived from dividends previously taxed under this section.
6. Soon after the original enactment of the Wisconsin privilege dividend tax statute, corporations affected by the statute instituted suits to test its constitutionality.
*375 7. The plaintiff did not file any Wisconsin privilege dividend tax returns, and it did not pay to the State of Wisconsin any amount with respect to the Wisconsin privilege dividend tax, during a period of 6% years following the enactment of the statute.
8. By an assessment notice letter dated June 25, 1938, enclosing a copy of an audit report dated May 24,1938, the Wisconsin Tax Commission assessed against the plaintiff privilege dividend taxes in the amount of $168,833.95, plus penalties and interest to June 30, 1938, in the amount of $16,591.56, or a total of $185,425.51, with respect to dividends declared and paid by the plaintiff during the period from September 26,1935, to May 1,1938, inclusive.
9. The plaintiff filed with the Wisconsin Tax Commission on July 15, 1938, a formal protest against the assessment mentioned in finding 8. In the protest, the plaintiff contended that the Wisconsin privilege dividend tax statute was unconstitutional, at least in so far as its application to the plaintiff was concerned and, in particular, in so far as the plaintiff’s shareholders who were nonresidents of Wisconsin were concerned. The protest also alleged that the statute imposed an unreasonable burden upon the plaintiff in requiring it to make withholdings, as set forth in the statute.
10. On January 16,1940, the Supreme Court of Wisconsin in the cases of J. C. Penney Co. v. Wisconsin Tax Commission, 289 N. W. 677, F. W. Woolworth Co. v. Wisconsin Tax Commission, 289 N. W. 685, and Minnesota Mining & Manufacturing Co. v. Wisconsin Tax Commission, 289 N. W. 686, held that the Wisconsin privilege dividend tax was invalid as applied to foreign corporations doing business in Wisconsin.
11. The Supreme Court of the United States, at the request of the State of Wisconsin, granted certiorari (310 U.S. 618, 619) to review the decisions of the Wisconsin Supreme Court mentioned in finding 10. On December 16, 1940, in decisions reported at pages 435, 452, and 622 of 311 U.S., the Supreme Court of the United States reversed the Wisconsin Supreme Court in the J. C. Penney Co., the Minnesota Mining & Manufacturing Co., and the F. W. Woolworth Co. cases, and held that the Wisconsin privilege dividend tax was constitutional as applied to foreign corporations doing business in Wisconsin.
*376 12. By an assessment notice letter dated December 28, 1940, enclosing a copy of an audit report dated October 1, 1940, the Wisconsin Department of Taxation assessed against the plaintiff additional privilege dividend taxes (exclusive of penalties and interest) in the amount of $117,-054.78 with respect to dividends paid by the plaintiff during the period from February 1,1938, to June 12,1940, inclusive.
13. The plaintiff filed with the Wisconsin Department of Taxation on January 28, 1941, a formal protest against the assessment mentioned in finding 12. This protest was similar to the protest of July 15,1938 (see finding 9).
14. After a hearing, the plaintiff’s protests (see findings 9 and 13) were formally denied on July 15, 1941. The plaintiff filed appeals respecting such denials with the Wisconsin Board of Tax Appeals, and a hearing relative to the appeals was held on September 25, 1941. At that hearing, the plaintiff for the first time conceded the constitutionality of the Wisconsin privilege dividend tax, as applied to foreign corporations doing business in the State of Wisconsin.
15. As a result of the hearing before the Wisconsin Board of Tax Appeals mentioned in finding 14, and subsequent conferences between the plaintiff and the Wisconsin tax authorities, and in accordance with the conclusions reached at such hearing and conferences, the Wisconsin Department of Taxation notified the plaintiff on December 31,1941, by telegram that the amounts of the assessments against the plaintiff to cover privilege dividend taxes, interest, and penalties were as follows with respect to the years 1936 through 1939:

Year Taa> Interest Penalty Total

1936_ $42,692.24 $13,361.24 $853.84 $56,907.32
1937_ 57, 600.21 14,439.71 1, 152.00 73,191. 92
1938_ 26, 368.27 5, 050. 99 527. 37 31,946. 63
1939_ 63, 353. 80 8,448.29 1,267.08 73, 069.17
190,014.52 41,300.23 3,800.29 235,115.04
16.Upon receipt of the notice of assessment referred to in finding 15, a “Special Remittance Advice,” together with an “Authorization for Check” dated December 31, 1941, in the amount of $235,115.04, was issued by the plaintiff on December 31, 1941. A check for $235,115.04 dated December 31,1941, was transmitted by the plaintiff, with a covering letter dated January 2, 1942, to the Wisconsin Depart *377 ment of Taxation in payment of the amounts set out in finding 15.
17. Stipulations reflecting the conclusions reached by the plaintiff and the Wisconsin tax authorities with respect to the aggregate assessments against the plaintiff for the period from September 25, 1935, to June 12, 1940, were executed and filed with the Wisconsin Board of Tax Appeals on January 13, 1942. The plaintiff’s appeals were dismissed by the Board on January 14,1942.
18. By means of an assessment notice letter dated July 22,1943, enclosing a copy of an audit report dated1 June 17, 1943, the amounts of $73,012.68, $80,854.23, and $43,555.12 were assessed against the plaintiff as Wisconsin privilege dividend taxes for the years 1940, 1941, and 1942, respectively. These amounts were paid by the plaintiff on September 18,1943.
19. The plaintiff did not withhold from the dividends which it paid to its shareholders any amounts to cover the Wisconsin privilege dividend taxes imposed against the shareholders by the Wisconsin statute, or imposed and assessed against the plaintiff, for the period 1935-1942. Furthermore, the plaintiff did not reimburse itself, and it was not reimbursed in any maimer, with respect to any portion of the aggregate amount of $387,436.55 which it paid to the State of Wisconsin as privilege dividend taxes.

Reasons Why Plaintiff Did Not Malee Withholdings

20. There were three basic reasons why the plaintiff, as indicated in finding 19, did not make any withholdings under the Wisconsin privilege dividend tax statute from the quarterly dividends paid to the plaintiff’s shareholders (ranging in number between 341,480 and 413,796) during the period 1935-1942. In the first place, the plaintiff was convinced for more than 5 years following the enactment of the statute that it was unconstitutional as applied to foreign corporations, such as the plaintiff, and, accordingly, the plaintiff felt certain that no payments were due the State under the statute. In the second place, at the time when each dividend was paid, it was very difficult for the plaintiff to compute, or even to estimate with reasonable accuracy, the amount of *378 the privilege dividend tax due on the dividend. In the third place, the plaintiff believed that the administrative expense and burden involved in making the withholdings would be unreasonably great in relation to the amount of the tax imposed and the degree of the risk of liability assumed by the plaintiff in not making the withholdings. Further information relative to these matters is set out in subsequent findings.
21. The plaintiff’s firm conviction during the period 1935-1940 relative to the unconstitutionality of the Wisconsin privilege dividend tax as applied to foreign corporations was based upon the advice of counsel, including advice from the plaintiff’s Wisconsin attorney. Moreover, this view was generally held, according to the plaintiff’s information, among legal experts in the tax field, and it was seemingly confirmed by the Supreme Court of Wisconsin in January 1940 (see finding 10).
22. With respect to the difficulty of computing, when each dividend was paid, the amount of the privilege dividend tax due on the dividend, the following considerations were pertinent:
(a) The Wisconsin privilege dividend tax statute required that withholding of the amount of the tax be effected at the time when each dividend was paid. It was required that a return be filed and the amount of the tax be paid to the State with respect to each dividend on or before the last day of the month following the payment of the dividend. The plaintiff’s quarterly common stock dividends were payable on the 12th (or 13th) day of each March, June, September, and December, and the plaintiff’s quarterly preferred stock dividends were payable on the 1st day of each February, May, August, and November. Accordingly, in order to comply with the Wisconsin statute, it would have been necessary for the plaintiff to be able to compute the amount of the withholding, and to withhold, during the first part of each February, March, May, June, August, September, November, and December, and to file returns and pay the taxes withheld to the State on or before the last day of each March, April, June, July, September, October, December, and January, respectively.
(b) Since the Wisconsin privilege dividend tax was applicable only to the portion of a dividend that was attribut *379 able to income derived from property located and business transacted in Wisconsin, the plaintiff could have made proper withholdings at the time when each dividend was paid only if the plaintiff had known at such time what percentage of its total income during the preceding year was earned in the State of Wisconsin. This essential information was not available to the plaintiff at the times when the quarterly common stock dividends and the quarterly preferred stock dividends were paid, as indicated in paragraph (a) of this finding. As a matter of fact, the February and March dividends were paid before the plaintiff figured and filed on March 15 its Wisconsin income tax return for the preceding year, and the February, March, May, June, August, and September dividends were paid before the plaintiff figured and filed on September 15 its Federal income tax return on total income for the preceding year.
(c) Furthermore, the percentage of the plaintiff’s total income during a particular year that was attributable under Wisconsin law to property located and business transacted in Wisconsin was never known with certainty until after the State of Wisconsin audited the plaintiff’s State income tax return for that year, and a substantial period of time invariably elapsed between the filing of a State income tax return by the plaintiff and the completion by Wisconsin of the audit of the return. The plaintiff’s Wisconsin income tax return for each of the taxable years during the period 1935-1941 was filed on or before March 15 of the succeeding year, and the lag between the time when the return was filed and the time when it was audited by the State ranged from 1% to 3y3 years. Prior to the completion of the audit relating to each of the taxable years during the period 1935-1941, the last dividend of the succeeding year had been paid by the plaintiff to its shareholders. With respect to each of these taxable years, there was either a substantial increase or a substantial decrease in the plaintiff’s Wisconsin income as determined by the State on audit, compared with the plaintiff’s Wisconsin income as reported by the plaintiff on its return. The increases, in terms of amounts, ranged from a low of $43,059 for 1939 to a high of $2,276,646 for 1936, and, in terms of percentages, from a low of 18.288 percent for 1938 to a high of 129.911 percent for 1936. The de *380 creases ranged, in amounts, from a low of $17,498 for 1940 to a high of $42,456 for 1941, and, in percentages, from a low of 15.046 percent for 1941 to a bigli of 15.597 percent for 1940.
(d) The extreme difficulty faced by the plaintiff in connection with the computation of the amount of the privilege dividend tax was recognized by the State of Wisconsin. A letter dated January 29, 1937, from the Wisconsin Tax Commission to the plaintiff stated in part as follows:
Because of the complicated structure of your corporation and its affiliated companies, we hesitate to attempt to prescribe from this office a formula for determining the percent of each dividend derived from property located and business transacted within Wisconsin. We believe that you would also encounter considerable difficulty in working out this formula.
Our field auditor, Mr. F. P. Mayo, who is quite familiar with your manner of computing Wisconsin taxable income, will complete his present assignment in about a week or ten days. If it meets with your approval, we would like to have him go to Detroit upon the completion of his present assignment and work with you in determining your liability under the Wisconsin privilege dividend tax statute. We do not contemplate any general audit of your books and records at the present time.
Mr. Mayo subsequently went to Detroit and conducted an audit of the plaintiff’s books. Mr. Mayo expressed tibe opinion that the company could not file its privilege dividend tax return until the company had the benefit of the State’s audit of the company’s income.
(e) After the constitutionality of the Wisconsin privilege dividend tax, as applied to foreign corporations, was upheld by the Supreme Court of the United States in December 1940 (see finding 11), the State changed its method of computing the Wisconsin privilege dividend tax liabilities. Whereas the State had previously used the ratio of Wisconsin income to total income in order to determine the portion of a dividend that was subject to tax, the State late in 1941 began to use the ratio of Wisconsin surplus to total surplus. This change in the method of computation resulted in reassessments by the State of the plaintiff’s taxes with respect to dividends declared and paid during the period from Sep *381 tember 26,1935, to December 31,1939, inclusive (see findings 8, 12, and 15). There were increases with respect to some years in this period, ranging from a low of $349.15 (or .6 percent) for 1939 to a high of $1,252.06 (or 5 percent) for 1938. There were also decreases for some years, ranging from a low of $15,144.89 for 19'35 to a high of $34,075.77 for 1936. In terms of percentages, the decreases ranged from a low of 23 percent for 1937 to a high of 100 percent for 1935. For the period 1935-1939, the reassessments resulted in an over-all decrease of $64,976.39 (or 25 percent) in the plaintiff’s privilege dividend tax liability.
23. (a) The problem of the administrative cost and burden to the plaintiff of making withholdings, in relation to the amount of the Wisconsin privilege dividend tax and the degree of risk involved in failing to withhold, was composed largely of the following two factors: (1) the administrative cost and burden of performing the physical act of withholding ; and (2) the administrative cost and burden of refunding to shareholders the amounts withheld, or portions thereof, if the statute were subsequently declared to be unconstitutional or if it were later determined that too much had been withheld.
(b) With regard to the physical act of withholding, the plaintiff’s stock transfer office would have had substantial direct expenditures in computing and withholding the tax four times each year with respect to the common shareholders, ranging in number from approximately 321,600 to approximately 392,300, and four times each year with respect to the preferred shareholders, ranging in number from approximately 20,000 to approximately 21,500, and in keeping the necessary records. In addition, there would have been overhead expenditures in connection with the making of the withholdings. Moreover, a substantial majority of the plaintiff’s shareholders would have had privilege dividend tax liabilities of less than 1 cent each per dividend, and many shareholders would have had privilege dividend tax liabilities of less than 5 mills each per dividend.
(c) As indicated in previous findings, the plaintiff felt certain until December 1940 that the Wisconsin privilege dividend tax as applied to foreign corporations would be *382 invalidated, as unconstitutional and, accordingly, that it would ultimately be required to refund to its many shareholders any amounts that might be withheld from dividends on account of the tax. The administrative cost and burden of making such refunds would obviously be great in relation to the small amounts withheld from individual shareholders. Moreover, since the amounts of the privilege dividend taxes could not be accurately computed at the various times when dividends were paid, any withholdings from dividends to cover the estimated amounts of such taxes would necessarily, as a matter of good business judgment, have been more than the maximum amounts that the plaintiff actually thought might ultimately be assessed by the State; and in the unlikely event (according to the plaintiff’s view) of the constitutionality of the pertinent statute being upheld, the plaintiff realized that it would be faced with a substantial administrative burden and expense in connection with the refunding to its many shareholders of any over-withholdings, after final audit by the State.

Federal Income and Excess Pro-fits Taxes

24. The plaintiff keeps its books and files its tax returns on a calendar year and on an accrual basis. The plaintiff duly filed Federal income and excess profits tax returns required under the Internal Eevenue Code of 1939, as amended, for the years 1941 and 1942, and subsequently filed several amendments to such returns. All amounts of tax shown to be due on such returns and the amendments thereto, as well as deficiencies in Federal income and excess profits taxes for the years 1941 and 1942 which were assessed after an audit of the plaintiff’s returns, have been paid. The total amounts of the income and excess profits taxes paid by the plaintiff for 1941 were $88,184,199.02 and $153,811,883.29, respectively. Waivers extending the period of limitations for the assessment of income and excess profits taxes for the year 1941 to December 31, 1953, were executed by the plaintiff and the Commissioner of Internal Eevenue on United States Treasury Forms 872. Excess profits taxes totaling $41,777,209.14 were paid by the plaintiff for the year 1942 *383 on various dates, beginning on or about March 15,1943, and ending on March 18,1952.
25. With the exception of the year 1937, for which a deduction of $57,600.21 was allowed, no deductions from gross income for Federal income and excess profits tax purposes on account of the plaintiff’s Wisconsin privilege dividend tax liabilities for the period 1935-1942 have been allowed with respect to any Federal tax return filed by the plaintiff.
26. (a) Claims for refunds of Federal income and excess profits taxes allegedly due the plaintiff were made by the plaintiff upon the Commissioner of Internal Eevenue by means of three separate claims for refund filed on February 12, 1954. As originally filed, the claims asserted that the plaintiff was entitled to recover under the provisions of subsections (c) and (d) of Section 23 of the Internal Eevenue Code of 1939. The plaintiff filed these claims with the District Director of Internal Eevenue at Detroit, Michigan. One claim for the year 1941 sought a refund of income tax in the amount of $42,641.30, a second claim sought a refund of excess profits tax for the year 1941 in the amount of $206,-328.86, and the third claim sought a refund of excess profits tax for the year 1942 in the amount of $35,279.65.[3]
(b) By a letter to the Director of Internal Eevenue at Detroit, Michigan, dated June 18, 1954, with respect to all three of the claims for refund, the plaintiff contended for the first time that it was, in the alternative, entitled to recover under Section 23(a) of the Internal Eevenue Code of 1939.
(c) Subsequently, with respect to all three of the claims for refund, the plaintiff by a letter dated October 18, 1954, transmitted a memorandum of law citing various authorities with respect to its contentions under subsections (d), (c), and (a) of Section 23 of the Internal Eevenue Code of 1939.
(d) With respect to the 1941 claims for refund, both the original filing of the claims on February 12, 1954, and the filing of the June 18, 1954, letter occurred within six months of the December 31, 1953, expiration date of waivers *384 executed by the plaintiff and the Commissioner of Internal Revenue on United States Treasury Forms 872, extending the period of limitations for the assessment of income and excess profits taxes for the year 1941.
(e) The amount of the 1942 excess profits tax paid by the plaintiff within the 2-year period immediately preceding February 12, 1954 (the date on which the claim for refund was originally filed with respect to the year 1942) was $257,673.72.
(f) No payment of excess profits tax for the year 1942 was made by the plaintiff within the 2-year period immediately preceding June 18,1954.
27. With respect to the plaintiff’s three claims for refund, the plaintiff received a communication dated September 29, 1955, from the Associate Chief, Appellate Division, Chicago Region, Internal Revenue Service, stating as follows:
This refers to your claims for refund of income and excess profits tax in the respective amounts of $42,641.30 and $206,328.86 for the year ended December 31, 1941 and for excess profits tax of $35,279.65 or $313,823.62 for the year ended December 31, 1942, and to the conference held in this office on March 31, 1955 with your company representatives.
It is held that the Wisconsin Privilege Dividend tax paid by you on behalf of your stockholders does not represent a proper deduction under section 23 (a), 23 (c), or 23(d) of the Internal Revenue Code of 1939 for 1941 and/or 1942.
Claims for refund filed by you for the year ended December 31, 1936 in the amount of $42,692.24 were allowed and an allowance was ma'de of $57,600.21 for the year ended December 31,1937 covering the Wisconsin Privilege Dividend tax. It is, therefore, held that these amounts would constitute a double deduction and are not allowable under section 23, Internal Revenue Code of 1939.
It is further held that the claim filed for the year ended December 31, 1942 is timely only to the extent of payments made within two years prior to the filing date of the claim in accordance with section 322(b) (3), Internal Revenue Code of 1939, and that that portion of your claim relying upon the provisions of section 23 (a), supra, was not timely filed.
On the basis of the foregoing findings, no part of your claims for refund is allowable.
*385 The statutory notice of the disallowance of your claims will be forwarded to you at a later date by registered mail, in accordance with the provisions of section 3772(a) (2) of the Internal Eevenue Code of 1939.
28. The plaintiff received a statutory notice of disallowance letter from the District Director of Internal Eevenue at Detroit, Michigan, dated October 17, 1955, which stated as follows:
In accordance with the provisions of Section 3772(a) (2) of the Internal Eevenue Code, this notice of disallowance in full of your claims is hereby given by registered mail.
29. If the amounts of the Wisconsin privilege dividend taxes assessed against and paid] by the plaintiff for the years 1936-1942 are deductible for Federal income and excess profits tax purposes under subsections (d) or (c) or (a) of Section 23 of the Internal Eevenue Code of 1939, and if a timely claim or claims for refund was or were filed with respect to the applicable subsection, $343,881.43 accrued as a deduction for Federal income and excess profits tax purposes in the calendar year 1941, and' $43,555.12 accrued as a deduction for Federal income and excess profits tax purposes in the calendar year 1942.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Eule 38(c).
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on October 20, 1961, that judgment for plaintiff be entered for $297,337.57, plus an amount representing allowable adjustments for interest previously assessed and paid thereon, together with statutory interest on the foregoing amounts as provided by law.
*386 On motion of the defendant, consented to by counsel for plaintiff, filed November 14, 1961, pursuant to Rule 54(b), to amend the above judgment by reducing the amount of the judgment of $297,337.57 to $296,031.86 for reasons set forth in the said motion, it was ordered on November 17, 1961, that the judgment entered on October 20, 1961, be amended and that judgment for plaintiff be entered for $296,031.86, plus an amount representing allowable adjustments for interest previously assessed and paid thereon, together with statutory interest on the foregoing amounts as provided by law.

 Other changes made in 1937 are unimportant from the standpoint of the present litigation.

 Other changes made in 1939 are unimportant from the standpoint of the present litigation.

 It has been stipulated that the correct amount of the refund claimed for 1942 should have been $34,769.04, rather than $35,279.65.