WILLIAM M. CASEY AND LIOU DIEN-MEI CASEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Casey v. Commissioner
Docket No. 9467-83.
United States Tax Court
T.C. Memo 1985-472; 1985 Tax Ct. Memo LEXIS 159; 50 T.C.M. (CCH) 1014; T.C.M. (RIA) 85472; September 10, 1985. Scott A. Taylor,Alfred D. Mathewson,Douglas E. Crow, and Gary D. Eisenberg, for the petitioners. Marty J. Raisanen, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in Federal income tax against petitioners for the taxable year ended December 31, 1979, in the amount of $158. After a concession by petitioners, [1] the only issue remaining for us to decide is whether petitioners are entitled to a deduction for sales tax, pursuant to the provisions of section 164, [2] in connection with their purchase of a lot in a subdivision including a newly constructed townhouse. FINDINGS OF FACT Some of the facts have been stipulated *161 and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. William M. Casey (hereinafter "petitioner") and Liou Dien-Mei Casey (hereinafter referred to, collectively, as "petitioners") were husband and wife and residents of Albuquerque, New Mexico, at the time of filing their petition in this Court. Petitioners timely filed a joint Federal income tax return for the taxable year 1979, using the cash basis method of accounting. On March 16, 1979, petitioner entered into a "New construction purchase agreement" with Homes by Marilynn, Inc. Pursuant to the terms of the aforesaid agreement, petitioner agreed to buy, and Homes by Marilynn agreed to sell and convey to petitioner, Lot #33 of La Vida Nueva subdivision, including a three bedroom townhouse, located at 209 La Vida Nueva del Oeste, Southwest, Bernalillo County, Albuquerque, New Mexico, for the sum of $35,250. In addition to the purchase price, petitioner agreed to pay for a credit report, recording fees, mortgage title policy, origination fee, survey, appraisal, prepaid items, prepaid interest, and all other closing costs. The seller agreed to pay all other costs. *162 Homes by Marilynn delivered a New Mexico nontaxable transaction certificate to the sellers of personal tangible property and construction services which were incorporated into or performed upon the construction project. The total sales price at which Homes by Marilynn sold the aforesaid property to petitioners was $35,250; there was no breakdown in the purchase agreement of the different costs that comprised the total purchase price. The settlement statement evidencing the closing of the sale to petitioners, dated May 7, 1979, reflected a contract sales price of $35,250 and detailed settlement charges of $1,837.92. An amount for New Mexico gross receipts tax was not separately stated therein.Homes by Marilynn paid a New Mexico gross receipts tax in the amount of $1,355.77 as a result of the sale of Lot #33 of La Vida Nueva subdivision, including the improvements therein, viz, the townhouse. [3]
Petitioner thereafter received, pursuant *163 to his request, a letter from Homes by Marilynn, which provided as follows: February 4, 1980 Mr. Bill Casey, 209 La Vida Nueva del Oeste S.W., Albuquerque, New Mexico 87105 Dear Bill: When you closed on your La Vida Nueva Townhome, the following monies were collected from you: Purchase Price of Home
$33,894.23
Sales Tax
1,355.77
Total
$35,250.00
The sales tax amount has been forwarded to the New Mexico Bureau of Revenue. I hope this information is useful to you. Sincerely, /S/ Michael A. Halsey, Business Manager On Schedule A of their return for 1979, petitioners deducted $1,356 [4] as "Sales Tax New Home." Petitioners further included the amount of the New Mexico gross receipts tax, claimed as a sales tax deduction ($1,356), in the basis of their new townhouse and reported it on line 11, cost of new residence, of Form 2119, Sale or Exchange of Personal Residence. *164 Respondent disallowed the claimed deduction in his statutory notice of deficiency, "because it does not qualify as sales tax imposed on tangible personal property within the definition of Section 1.164-3(e)(1) of the regulations." OPINION State or local general sales taxes are allowed as a deduction for income tax purposes for the taxable year in which paid, by a taxpayer using the cash method of accounting, pursuant to section 164. [5]
*165 In determining whether a state sales tax is imposed against taxpayers so as to authorize them to deduct the amount of the tax in computing their Federal tax liability, we must look to the law of the state imposing the liability and its interpretation by the courts of that state. Magruder v. Supplee,316 U.S. 394 (1942); Wisconsin Gas & Electric Co. v. United States,322 U.S. 526 (1944); Petty v. Commissioner,77 T.C. 482 (1981); Armentrout v. Commissioner,43 T.C. 16 (1964). The tax which is involved in the instant case is imposed by the State of New Mexico under the provisions of chapter 7, N.M. Stat. Ann. (1978). In order to provide revenue for public purposes, New Mexico imposes a gross receipts tax on the privilege of engaging in business in the State. Sections 7-9-2, 7-9-4, N.M. Stat. Ann. (1978). The gross receipts tax is an excise tax equal to three and three-fourths percent of gross receipts. Section 7-9-4, N.M. *166 Stat.Ann. (Cum. Supp. 1979). Gross receipts are determined by adding up the total amount of money or the value of other consideration received from the sale or lease of property or for the performance of services in New Mexico. Section 7-9-3(F), N.M. Stat. Ann. (Cum. Supp. 1979); New Mexico Enterprises Inc. v. Bureau of Revenue,86 N.M. 799, 528 P.2d 212 (Ct. App. 1974). Property is broadly defined by the statute and includes, inter alia, real property and tangible personal property. Section 7-9-3(I), N.M. Stat. Ann. (Cum. Supp. 1979).Service is also a defined term, which includes construction activities and all tangible personal property that will become an ingredient or component part of a construction project. However, sales of tangible personal property that will become an ingredient or component part of a construction project, to persons engaged in the construction business, are sales of tangible personal property. Section 7-9-3(K), N.M. Stat. Ann. (Cum. Supp. 1979). In order to eliminate the double taxation that would otherwise result, receipts from selling tangible personal property or construction services may be deducted from gross receipts by the seller *167 or supplier of such tangible personal property or construction services if the sale is made to a person engaged in the construction business who delivers a nontaxable transaction certificate to the seller. [6] The buyer delivering the nontaxable transaction certificate must incorporate the personal tangible property or services as an ingredient or component part of a construction project which is subject to the gross receipts tax upon its completion, or upon the completion of the overall construction project of which it is a part, or as an ingredient or component part of a construction project which is subject to the gross receipts tax upon the sale in the ordinary course of business of the real property upon which it was constructed. Sections 7-9-51 and 7-9-52, N.M. Stat. Ann. (1978). [7]
*168 Pursuant to the aforementioned statutes, Homes by Marilynn delivered a nontaxable transaction certificate to the suppliers or sellers of personal tangible property, incorporated into, and the construction services, performed upon, the construction project. Section 7-9-53(A), N.M. Stat. Ann. (Cum. Supp. 1979), provides that receipts from the sale of real property may be deducted from gross receipts. However, that portion of the receipts from the sale of real property which is attributable to improvements constructed on the real property by the seller in the ordinary course of his construction business may not be deducted from gross receipts. Thus, the Internal Revenue Code, the laws of New Mexico, and the facts of this case provide the field of battle upon which the parties here are met. The issues between them are these: 1. Petitioners contend that they were the ultimate consumers of the materials and services which went into the construction of their townhouse; that these were the things on which the New Mexico tax was laid when they bought the townhouse; and that they were therefore *169 the purchasers at retail of the taxable items. Respondent contends that Homes by Marilynn was the purchaser at retail of the materials and services and was the ultimate consumer thereof in creating a new thing -- the townhouse -- which was thereafter sold to petitioners, who are therefore not to be considered the purchasers at retail, within the meaning of section 164(b)(2). 2. Petitioners contend that the New Mexico tax is a true "general sales tax" laid upon the value of the materials and the services which went into the townhouse which they bought and which are personal property; alternatively, they contend that if the taxable townhouse is considered to be real estate, rather than personal property, the New Mexico tax is still allowable as a deductible sales tax under sections 164(a)(4) and 164(b)(2)(A), and that respondent's regulation, section 1.164-3(e)(1), Income Tax Regs., which restricts the deduction to taxes on sales of tangible personal property and services, is invalid. Respondent, while conceding that the New Mexico gross receipts tax is a "general sales tax" within the meaning of section 164(a)(4), as a broad proposition, [8] denies deductibility *170 of the tax in this case since, says respondent, the tax here was imposed on the sale of a house and lot, which was real estate, a type of property as to which applicable sales taxes are not deductible for Federal income tax purposes; and respondent defends the validity of the challenged regulation in excluding such taxable sales from the scope of section 164(a)(4). 3. Petitioners urge that the New Mexico tax on the sale of the townhouse to them is deductible by them for Federal income tax purposes because such tax was "separately stated" and was paid by them, within the meaning of section 164(b)(5) and section 1.164-5, Income Tax Regs. Respondent contends that under the facts of this case, the requirements of the cited Code section and regulation were not complied with. The burden of proof upon all of the issues thus presented is upon petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Furthermore, in order to prevail here, petitioners must show that they are correct on *171 all such issues. In claiming deduction under section 164, as they did, petitioners took upon themselves the burden of meeting all the requirements of that section which are applicable under the facts. Helvering v. Taylor,293 U.S. 507 (1935); Burnet v. Houston,283 U.S. 223 (1931); Estate of Jayne v. Commissioner,287 F.2d 10, 15 (8th Cir. 1961). Bearing these principles in mind, we conclude that we do not need to resolve the first two issues presented above, for even if we accept, arguendo, petitioners' position on those first two matters, petitioners here cannot prevail because they have failed on the third issue. [9]
The legal incidence of the New Mexico gross receipts *172 tax is on the seller of property or services. [10]United States v. New Mexico,455 U.S. 720 (1982); Mescalero Apache Tribe v. O'Cheskey,625 F.2d 967 (10th Cir. 1980), cert. denied 450 U.S. 959 (1981); First National Bank v. Commissioner,80 N.M. 699, 460 P.2d 64 (Ct. App. 1969), cert. denied 80 N.M. 707, 460 P.2d 72 (1969), appeal dismissed, 397 U.S. 661 (1970). The fact that, under the law imposing it, the incidence of such State or local tax does not fall on the consumer, however, is not necessarily controlling. Where the amount representing a state and local general sales tax is separately stated and paid by the consumer (other than in connection with his trade or business) the taxpayer is entitled to deduct said amount as tax. Section 164(b)(5). [11]
*173 Section 1.164-5, Income Tax Regs., provides, in pertinent part: The requirement that the amount of tax must be separately stated will be deemed complied with where it clearly appears that at the time of sale to the consumer, the tax was added to the sales price and collected or charged as a separate item. It is not necessary that the consumer be furnished with a sales slip, bill, invoice, or other statement on which the tax is separately stated. For example, where the law imposing the State or local tax for which the taxpayer seeks a deduction contains a prohibition against the seller absorbing the tax, or a provision requiring a posted notice stating that the tax will be added to the quoted price, or a requirement that the tax be separately shown in advertisements or separately stated on all bills and invoices, it is presumed that the amount of the State or local tax was separately stated at the time paid by the consumer; * * * [Emphasis added.] We are not satisfied that the requirements of the statute and the regulations have been complied with in the present case. Petitioners have not brought *174 to our attention, nor has our research of New Mexico law produced any statutes or regulations requiring that there be a posted notice stating that the tax will be added to the quoted price, or that the tax be separately shown in advertisements or separately stated on all bills and invoices. Nor is there a prohibition against the seller absorbing the tax. [12] Thus, the presumption (that the tax was separately stated at the time paid by the consumer) provided by the regulations is not applicable to the facts herein. It thus remained petitioners' burden to show clearly that at the time of sale to petitioners, the tax was added to the sales price and collected or charged as a separate item. Petitioners have failed to make the necessary showing. Petitioners rely on Gay v. Commissioner,T.C. Memo. 1980-19, and Robertson v. Commissioner, a Memorandum Opinion of this Court dated March 6, 1952, for the proposition that no written documentation is necessary to fulfill the separately-stated *175 requirement of section 1.164-5, Income Tax Regs.
The cases cited by petitioners are distinguishable and do not support their contentions. Neither Gay, nor Robertson, involved a sales tax imposed upon the sale of a newly constructed house; in addition, both cases involved situations where the amount of the tax was added to the gross price of the items purchased and presumably not incorporated into the total cost. Here, nothing in the new construction purchase agreement or the settlement statement made it possible to discern which portion of the purchase price was properly attributable to the gross receipts tax paid by the builder to the State of New Mexico. Both the purchase agreement and the settlement statement reflect a final purchase price of $35,250. At neither point in time were petitioners told that the purchase price was a specified amount plus tax, other than the final figure ($35,250), nor was this shown in any other fashion. Petitioner testified as follows: Q. Mr. Casey, what was the agreed purchase price of your new townhouse? A. It was $35,250.00. Q. Was it your understanding that this was the amount of the price *176 that you would pay on conclusion of the construction of your home? A. Yes. Q. And is that the price you did pay? A. Yes. Q. Did you also purchase land, Mr. Casey? A. I think so, but I am not quite sure, because it was a townhouse. Q. Could you describe what you did purchase? A. We purchased the description on the purchase agreement, says Lot 33, La Vida Nueva subdivision. So my understanding at the time was that we were buying that little piece of land with a townhouse on it. Since this has come up, I am not quite sure whether that was right or not, but that was my understanding at the time that we were buying the land and the house that sat on it. [13]
Q. Do you know how much of the price consisted of the value of the land that you did purchase? A. No, I'm sorry, I don't. Q. Then you did not negotiate the price of the land separate from the price of the home, is that correct? A. No, we did not. * * * Q. You testified that at the time you purchased your townhouse, you knew the gross receipts tax would be figured *177 in such a way that you could deduct that amount of tax. Was that your testimony? A. Well, I didn't know how they figured it and I still don't know how they figured it. All I knew was that the gross receipts tax was included in the price of that house, the same way the tax was included when you go to the store and buy something and I knew also that I could deduct -- how they figured it, I didn't know.I knew that at some point they would state to me what the tax was. Q. So at the time of the purchase you did not concern yourself with the exact method of computation then, in order ot insure deductibility? A. No, I wasn't worried about the computation because I knew it was deductible and included in the price. Q. Would it be more accurate to say that you just thought it was deductible? A. No, I think it is more accurate to say I knew because I prepared tax returns and we had deducted some. I had deducted some on my 76 return and it had always gone through clear. Q. You had taken the deduction in the past, is that correct? A. Yes. * * * Q. Now, prior to February of 1980, did you know at any time the amount of the gross receipts tax that the builder paid on conclusion *178 of the sale of your home? A. No, I never knew the amount. Q. Did you write to MaryLynn, Inc., concerning the amount of the tax that was included in the gross sales price of your home? A. No, what I did was call Mike Halsey (ph) the business manager, and asked for a letter stating my tax so that I could use it for my tax preparation. Q. Do you recall the approximate date that you made that call? A. It was sometime during January of 80 when I was starting to get my tax records together. Q. Them [sic] in preparation of your return, you did inquire as to the amount of the sales tax paid by MaryLynn in connection with the purchase of your new home, is that correct? A. Yes, and I asked him to give it to me by letter, because I knew that was what I needed to deduct it. Q. Was February of 1980 the first time you became aware of the amount of sales tax for which you were going to claim a deduction? A. Yes. From the above testimony, it is apparent that at the time of the sale of the townhouse to petitioners, it did not "clearly appear" that the amount of the New Mexico tax was "being added to the sales price and collected or charged as a separate item. *179 " The only relevant and contemporaneous documents -- the sales contract and the settlement statement -- were silent on the subject, and petitioners did not know what the tax was or how it was computed, demonstrating that they did not have this essential information from any other source. Petitioner's testimony that he "knew" the New Mexico tax was deductible is better characterized as a belief, based upon his preparing returns for other taxpayers with similar transactions, where the tax was claimed and apparently was not challenged by respondent. Certainly, petitioner's "knowledge" was not based upon anything furnished to him at the time of sale by Homes by Merilynn. Petitioners rely principally upon a letter to them from Homes by Marilynn, which states an amount as representing the New Mexico gross receipts tax on the purchase of their townhouse, as satisfying the "separately stated" requirement of section 164(a)(5) and the regulations quoted above. We find this letter to be deficient in at least two respects: a) The letter was sent to petitioners in February 1980 with respect to a sale which closed in May 1979. It was thus not a clear statement of a separately stated tax made *180 at the time of the sale within any reasonable interpretation of section 1.164-5, Income Tax Regs.
b) Although the letter does not reveal how the stated New Mexico tax was arrived at, the parties stipulated that Homes by Marilynn did it by dividing the sales price of the townhouse and lot, in the amount of $35,250, by 1.04, to produce a gross receipts tax figure of $1,355.77, based upon an effective tax rate of four percent. Such computation appears to be in error in two respects: 1. The state gross receipts tax rate in 1979 was 3 3/4 percent, not 4 percent. Section 7-9-4(A), N.M, Stat. Ann. (Cum. Supp. 1979). The County Gross Receipts Tax was repealed by Chapter 88, section 1, N.M. Laws 1979. Whether any municipal gross receipts tax was added into the computation by Homes by Marilynn is not disclosed in this record. 2. In determining the amount of gross receipts upon which the tax is laid, receipts from the sale of real property (with exceptions not relevant here) are to be deducted. "However, that portion of the receipts from the sale of real property which is attributable to improvements constructed on the real property by the seller in the *181 ordinary course of his construction business may not be deducted from gross receipts." Section 7-9-53(a), N.M. Stat. Ann. (Cum. Supp. 1979). In the instant case, the sale to petitioners included lot 33 of La Vida Nueva Subdivision, improved by a newly constructed three-bedroom townhouse. Homes by Marilynn sold this property to petitioners for a single price, but in the computation of tax it did not subtract out the value of the underlying real estate, so that the tax would be imposed only on the improvements, as required by New Mexico law. Nor is there anything in this record to show what part of the total price represented such underlying land value. Accordingly, even if the Homes by Marilynn letter could be considered as a clear and timely separate statement of the tax, it was an incorrect statement. [14]
*182 Petitioners argue that: (1) Certain internal government pronouncements lend support to their position, citing G.C.M. 38902, I-243-81 (March 17, 1982); and (2) it was the administrative practice of the Examination Division of the New Mexico District of the Internal Revenue Service, prior to 1979, to allow a sales tax deduction where the purchaser provided a letter from the builder showing the amount of gross receipts tax included in the gross sales price. A General Counsel Memorandum ("G.C.M.") is an internal document representing review of a proposed draft of a revenue ruling at the level of the Associate Chief Counsel (Technical). The G.C.M. specifically states that "This document is not to be relied upon or otherwise cited as precedent by taxpayers." In any event, the aforesaid G.C.M. is of no help to petitioners since the hypothetical situation therein differs from the facts in the instant case; the sales tax in G.C.M. 38902, supra, was a separately stated amount, not included as part of the sales price, but added to the gross sales price. Finally, as to petitioners' contention that respondent is attempting "to change the rules in the middle of *183 the game," suffice it to say that even if the practice of one division of the Internal Revenue Service can be considered as a determination by the Commissioner, he is not prevented from changing his position to correct an error of law, even retroactively. Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). He may do so even where a taxpayer may have relied to his detriment on the Commissioner's mistake. Dixon v. United States,381 U.S. 68 (1965); Manhattan General Equipment Co. v. Commissioner,297 U.S. 129 (1936). In view of the foregoing, Decision will be entered for the respondent.
Footnotes
1. Petitioners have conceded the correctness of respondent's adjustment in the statutory notice of deficiency disallowing moving expenses, in the amount of $304, for the taxable year 1979. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. The time when this tax was paid is not disclosed in the record. The due date for Homes by Marilynn to pay the tax, however, was 25 days after the close of the month in which the taxable sale occurred. Sec. 7-9-11, N.M. Stat. Ann.↩ (1978).
4. The amount of the aforesaid deduction was computed as follows: Gross sales price
$35,250   divided by
1.04    Sales tax base
$33,894.23
Sales tax rate
.04   Claimed deduction
$ 1,355.77
rounded to the nearest number. The applicable New Mexico gross receipts tax rate during the year in issue was three and three-fourths, and not four percent. Sec. 7-9-4(A), N.M. Stat. Ann.↩ (Cum. Supp. 1979). The discrepancy is not explained by the record.
5. Sec. 164 provided, in pertinent part, as follows during the year in issue: Sec. 164. TAXES (a) General Rule.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: * * * (4) State and local general sales taxes. * * * (b) Definitions and Special Rules.--For purposes of this section -- * * * (2) General sales taxes.-- (A) In general.--The term "general sales tax" means a tax imposed at one rate in respect of the sale at retail of a broad range of classes of items. * * * (5) Separately stated general sales taxes.--If the amount of any general sales tax is separately stated, then, to the extent that the amount so stated is paid by the consumer (otherwise than in connection with the consumer's trade or business) to his seller, such amount shall be treated as a tax imposed on, and paid by, such consumer.↩
6. Nontaxable transactions certificates are forms provided by the New Mexico Taxation and Revenue Department and issued to buyers by the Department. They carry a control number for which tax exempt purchasers must account. Most deductions from gross receipts must be supported by a nontaxable transaction certificate. See secs. 7-9-43 through 7-9-76.1, N.M. Stat. Ann.↩ (Cum. Supp. 1979). 7. Taxpayers report to the New Mexico Taxation and Revenue Department their full gross receipts and the deductions to which they are entitled, indicating on the return the type of deduction they are taking.↩
8. Rev. Rul. 82-173, 1982-2 C.B. 58↩.
9. In declining to pass on the first two issues presented, we intimate no opinion how we would resolve them if forced to do so. Substantial questions are clearly presented, were ably briefed by the parties, and easy answers are not apparent. Since it is not necessary to resolve them in this case, however, such resolution must await another case on another day.↩
10. New Mexico Gross Receipts Reg. 6:2, as amended May 3, 1982, provides that the gross receipts tax is imposed on persons engaging in business in New Mexico. Such persons are solely liable for payment of the tax; they are not collectors on behalf of the state. ↩
11. See footnote 5, supra.↩
12. See fn. 10. Indeed, the contract of sale can be reasonably interpreted as placing the burden of the tax on the seller. See our findings of fact, supra.↩
13. We have found as a fact that petitioners purchased Lot #33 in La Vida Nueva subdivision, including a three-bedroom townhouse.↩
14. The parties stipulated as to how the tax was computed, as we have described above, and we have accepted it as a stipulation of fact. However, they did not and could not effectively stipulate that such computation was correct. That is a conclusion of law which is the province of the Court to decide. See King v. United States,641 F.2d 253, 258↩ (5th Cir. 1981).