William M. CASEY and Liou Dien-Mei Casey, Plaintiffs-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.

No. 85–2543.

United States Court of Appeals, Tenth Circuit.

Sept. 30, 1987.

Scott A. Taylor, Clinical Law Program, University of New Mexico, School of Law, Albuquerque, N.M., for plaintiffs-appellants.

James H. Love, Atty., Tax Div., Dept. of Justice, (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, with him on the brief), Washington, D.C., for defendant-appellee.

Before LOGAN and SETH, Circuit Judges, and BOHANON, District Judge.[*]

LOGAN, Circuit Judge.

William M. and Liou Dien-Mei Casey appeal from a decision of the United States Tax Court assessing a deficiency on their 1979 federal income tax return.

The only issue on appeal is whether the Caseys may deduct as "general sales taxes" under I.R.C. § 164(a)(4), as it existed before 1986,[1] amounts paid as New Mexico gross receipts taxes by the builder of a residence sold to them. The Caseys assert that they met the requirements of the statute and that Treas.Reg. § 1.164–3(e)(1) (1964), which they do not satisfy, invalidly interprets the statute. Alternatively, they argue that, even if the regulation is valid, they satisfied both the statute and the regulations. The Tax Court held for the government on the ground that the Caseys had not met the "separately stated" requirement of § 164(b)(5);[2] it did not consider the other arguments. *William M. Casey*, 50 T.C.M. (CCH) 1014 (1985).

Because the essential facts are stipulated and many pending cases depend on the outcome of this litigation, we affirm the Tax Court judgment on a ground more generally applicable. The Treasury Department's interpretation in Treas.Reg. § 1.164–3(e)(1) (1964) that the term "sales tax" means a tax imposed upon the sale of "tangible personal property" or upon the furnishing of "services" must be given effect. Since the Caseys here acquired realty and not tangible personal property, they are not entitled to the deduction.

New Mexico imposes a gross receipts tax on the sale of all services and property, N.M.Stat.Ann. § 7–9–1 *et seq.* The tax does not apply to the sale of real property, but it does apply to receipts attributable to "improvements constructed on the real property by the seller in the ordinary course of his construction business...." *Id.* § 7–9–53(A). Thus, when a newly built home and lot are sold, the home builder[3]

* The Honorable Luther L. Bohanon, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

1. The deduction for general sales taxes was eliminated by Pub.L. No. 99–514, § 134(a)(1), 100 Stat. 2116 (1986); § 164(a)(4), after the 1986 tax amendments, does not deal with sales taxes. Unless otherwise noted, this opinion refers to the pre–1986 law when it mentions § 164(a)(4).

2. I.R.C. § 164(b)(5) was also repealed in 1986 by Pub.L. No. 99–514, § 134(b)(1).

3. To avoid double taxation on the materials used in the construction, New Mexico permits a builder to deliver nontaxable transaction certificates to the sellers of materials incorporated into the new home. *Id.* § 7–9–51. This certificate exempts the seller of the materials from paying the gross receipts tax, but it requires the builder to pay the tax, based upon the value of the building, when the new home is sold. Of course, the builder may pass through the cost of the gross receipts tax to the homebuyer, but the legal incidence of the tax falls on the builder. *Mescalero Apache Tribe v. O'Cheskey,* 625 F.2d

must pay a gross receipts tax on the value of the new home but not on the value of the lot.

The Caseys agreed on March 16, 1979 to purchase a new townhouse and the underlying lot from the builder, Homes by Marilynn, Inc., for $35,250.00 plus settlement charges of $1837.93.[4] The Caseys and the builder never discussed who would pay the gross receipts tax. Months later, on February 2, 1980, the Caseys requested and received from the builder a letter which indicated that the sale price of the townhouse and lot included $1355.77 for the gross receipts tax.[5] The Caseys deducted this amount on their 1979 federal income tax returns under I.R.C. § 164(a)(4) and (b)(5), as separately stated general sales taxes paid by a consumer to the seller.

## I

The Caseys contend that the sales tax deduction, as plainly set forth in § 164(a)(4) of the statute, is broad enough to allow them to deduct the gross receipts tax paid on the townhouse and lot. They challenge the validity of Treas.Reg. § 1.164–3(e)(1) (1964), which limits the sales tax deduction to amounts paid on sales of tangible personal property and services. For the purposes of this argument, the Caseys concede that the townhouse and lot are realty and thus fall outside the regulation.

The Caseys' argument against the validity of the regulation is based upon Congress' changing the language of § 164 in 1964. Under the 1954 Code, § 164(c)(2)(A) explicitly limited federal deductibility of sales taxes to those levied on "tangible personal property." Congress omitted this explicit limitation in 1964, when it amended the section to read,

"[Sec. 164(a)]

(a) GENERAL RULE.—[T]he following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

.    .    .    .    .

(4) State and local general sales taxes."

Pub.L. No. 88–272, § 207(a), 78 Stat. 19, 40–41 (1964). Although Congress eliminated the explicit reference to tangible personal property, the Treasury Department's regulation, amended in 1964, continued to interpret the scope of the deduction as before:

"(e) *Sales Tax.* (1) The term "sales tax" means a tax imposed upon persons engaged in selling tangible personal property, or upon the consumers of such property...."

Treas.Reg. § 1.164–3(e)(1) (1964). The regulation has not been amended since.

The standard of review for a Treasury regulation is highly deferential:

"This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons."

*Commissioner v. South Texas Lumber Company,* 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948) (citation omitted). The Caseys thus must demonstrate that the regulation is both unreasonable and plainly inconsistent with the statute. The issue reduces to a simple query: Did Con-

---

967, 970 (10th Cir.1980) (en banc), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981).

**4.** The "settlement charges" included a credit report, recording fees, mortgage title policy, origination fee, survey, appraisal, prepaid items, prepaid interest, and all other closing costs. *See William M. Casey,* 50 T.C.M. (CCH) at 1014.

**5.** The $1355.77 was derived by treating the $35,-250.00 figure as 104% of the purchase price of the house and land. The New Mexico state rate in 1979 was 3¾%; taxpayers contend that Albuquerque levied an additional ¼% city gross receipts tax. The $1355.77 mistakenly includes the value of the underlying lot, since the gross receipts tax applies only to improvements seller placed on the property and not to the underlying lot. N.M.Stat.Ann. § 7–9–53 (1979). Because we disallow the entire deduction, this miscalculation is not material.

gress in 1964 intend to broaden the benefits of the sales tax deduction?

What little light the legislative history of the 1964 amendment sheds almost entirely supports the notion that no change was intended. Both the House and Senate reports state that Congress desired to "continue" the sales tax deduction; this reasonably could be construed as an intent to maintain the deduction's historic boundaries. H.R.Rep. No. 749, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Admin.News 1313, 1357; S.Rep. No. 830, *id.* at 1726, 1728. To the extent that the 1964 amendments contemplated any change in revenue, they anticipated an increase in revenues from the denial of deductibility of certain state and local taxes other than the sales tax deduction. H.R. Rep. No. 749, *id.* at 1358, 1361, S.Rep. No. 830, *id.* at 1727, 1729. Congress discussed no change in revenue from the sales tax deduction; from this we may infer that Congress intended no change in the scope of that deduction. The technical explanation of the tax bill refers to the sales tax as being on "tangible personal property." H.R.Rep. No. 749, *id.* at 1468; S.Rep. No. 830, *id.* at 1880 (referring to the House Report technical explanation).

The only evidence from which a contrary intent might be inferred comes from the reports stating that Congress intended to establish a neutral federal posture toward state property, income, and general sales taxes, so that states could choose freely among the three major revenue sources without federal tax law influencing the decision. H.R.Rep. No. 749, *id.* at 1357; S.Rep. No. 830, *id.* at 1726. Perhaps it could be argued that the regulation, which denies deductibility for some general sales taxes, creates a federal bias against sales taxes and thus is inconsistent with the statute. We do not accept such an inference as

enough to yield a definitive congressional intent for change.

Additionally, we note that between 1964 and 1979, during which time the Treasury Department's regulation limited the tax deduction to sales of tangible personal property, Congress amended I.R.C. § 164 several times without clarifying or changing subsection (a)(4). *See* Pub.L. No. 92–580, § 4(a), 86 Stat. 1276, 1277 (1972) (adding a new subparagraph to subsection (b)(2)); Pub.L. No. 94–455, § 1951(b)(3)(A) and (B), 90 Stat. 1520, 1837 (1976) (repealing old subsection (f) and adding a savings provision); Pub.L. No. 95–600, § 111(a) and (b), 92 Stat. 2763, 2777 (1978) (repealing gasoline tax deduction).

When Congress is, or should be, aware of an interpretation of a statute by the agency charged with its administration, Congress' amendment or reenactment of the statutory scheme without overruling or clarifying the agency's interpretation is considered as approval of the agency interpretation. This rule has been applied in many tax cases. *E.g., Paragon Jewel Coal Co. v. Commissioner,* 380 U.S. 624, 636, 85 S.Ct. 1207, 1213, 14 L.Ed.2d 116 (1965); *Helvering v. Winmill,* 305 U.S. 79, 82–83, 59 S.Ct. 45, 46, 83 L.Ed. 52 (1938). The rule seems particularly appropriate when the interpretation is in a duly promulgated regulation, on an issue as noticeable and frequently applied as the deduction for general sales taxes. We therefore find the Treasury's interpretation to be consistent with Congress' intent.[6]

## II

■ The Caseys' second argument, which they raise somewhat indirectly, is that even if the Treasury regulation is valid, they meet the requirements of the regulation because what they purchased was, in effect, personalty. We reject this conten-

6. The Caseys also argue that although Treas. Reg. § 1.164–3(e)(1) recites that the term sales tax "means" a tax imposed on sales of tangible personal property, the regulation's later statement that the term "also includes" a tax upon furnishing services indicates that we should apply an expansive interpretation; i.e., tangible personal property is merely illustrative of what

constitutes the subject of a "sales tax." We are not impressed with the argument, since the same wording appeared in the regulation during the pre–1964 period, when the Code clearly restricted tax deductions to sales of tangible personal property and services. Treas.Reg. § 1.164–5(b) (1957).

tion. We are satisfied that what the Caseys purchased in this case must be classified as real estate.[7] Federal law, as explicated in the regulation, allows the deduction of state taxes paid on personal but not real property. In such a situation, the federal law incorporates a particular state's definition of real and personal property. *See Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 209–10, 66 S.Ct. 992, 995, 90 L.Ed. 1172 (1946). Here, the builder sold a townhouse and lot to the Caseys. Under New Mexico law, the term "real estate ... shall be so construed as to be applicable to lands, tenements, and hereditaments...." N.M.Stat.Ann. § 47–1–1 (1978). The lot clearly is realty, and the townhouse normally qualifies as a tenement.

Despite their admission that a townhouse is realty, the Caseys appear to suggest that the townhouse should be considered a collection of separable building supplies which, under the New Mexico taxing statute, constitutes personal property and, under IRS guidelines, qualifies for the sales tax deduction.[8] We find such an argument wholly unpersuasive. The Caseys bought a completed townhouse, not the separate building materials therein. Given the finished nature of the townhouse, the argument lacks foundation in New Mexico law; once the tangible personal property is incorporated into a construction project, it becomes real property:

> "This court has long subscribed to the three general tests to be applied in determining whether an article used in connection with realty is to be considered a fixture [and thus real property]. First,

annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold."

*Garrison General Tire Service, Inc. v. Montgomery*, 75 N.M. 321, 404 P.2d 143, 145 (1965). In the instant case, all building supplies were annexed to the realty when they were combined into the townhouse, which sat permanently on the realty; the materials were adapted to the purpose for which the lot was appropriated, i.e., to provide a permanent residence for the eventual purchaser; and the builder intended that these building materials would become permanent accessions to the lot. Thus, the Caseys could win only if they had proved that they bought not the townhouse but the building materials, and that they hired a builder to incorporate the materials into a townhouse. *See* Rev.Rul. 82–173, 1982–2 C.B. 58.[9] They could not prove this in the instant case because they bought a completed townhouse.

In conclusion, Treas.Reg. § 1.164–3(e)(1) (1964) narrowly limits the federal deductibility of sales taxes under § 164(a)(4) to taxes paid on tangible personal property. Because the instant case involves taxes paid on real property, the assessed deficiency of $158 is correct, and the decision of the Tax Court is AFFIRMED.

SETH, Circuit Judge, dissenting:

I must respectfully dissent from the position and explanation of the majority.

> " 'Service' includes construction activities and all tangible personal property that will become an ingredient or component part of a construction project. Such tangible personal property retains its character as tangible personal property *until it is installed as an ingredient or component part of a construction project* in New Mexico."

N.M.Stat.Ann. § 7–9–3(K) (Supp.1987) (emphasis added). *See* 1983 N.M. Laws Ch. 220, §§ 1, 14.1. Upon incorporation into a construction project, building materials shed their identity as tangible personal property.

---

**7.** While the Caseys conceded that a townhouse is realty, Reply Brief for Appellants at 10, they earlier appeared to dispute this position by suggesting that their house should be viewed as personalty. Opening Brief for Appellants at 34–35. Regardless of the Caseys' current position, we reach and decide this issue to guide the disposition of future cases.

**8.** "You can add to the tax table amount the general sales tax you paid if you bought ... materials to build a home...." Instructions to Form 1040, p. 16 (1979).

**9.** The New Mexico statute now makes this conclusion inescapable. In 1983, § 7–9–3(K) was amended to read:

The IRS sought to disallow a deduction by taxpayers of New Mexico gross receipts tax paid on the purchase of a new house in 1979. The Tax Court disallowed the deduction for a failure to meet a "separately stated" requirement. The Commissioner asserts also that the disallowance was proper under Reg. § 1.164–3 which essentially defines a "sales tax" for which a deduction is permitted to be a tax on *tangible personal property* and services. The majority considers only the regulation point. This Regulation was issued after Congress had changed the applicable portion of the Act in 1964, as hereinafter described (Pub.L. No. 88–272), and before New Mexico changed from a sales tax to a gross receipts tax. Revenue Ruling 82–173, interpreting the Regulation, sought belatedly to apply the narrow definition for the first time and to disallow deductions of the state tax imposed on the sale of new homes in New Mexico on the ground that the tax was not on "tangible personal property."

This litigation centers on the 1964 change made by Congress in the section of the statute relating to deductions for state "sales taxes" (1954 Code § 164(c)(2)(A)) *to omit* the express limitation on deductibility of sales taxes to taxes on "tangible personal property" and to substitute the term "general sales taxes" for "sales taxes." There was thus substituted by Pub.L. No. 88–272 as a permissible deduction: "State and local general sales taxes." "General sales taxes" were defined *in the statute.* No reference to "tangible personal property" was carried forward in the statute or definitions and the new term "general sales taxes" replaced the term "sales tax." However, the Treasury Regulation here concerned reinserted the eliminated "tangible personal property" limitation by way of an interpretative regulation (Reg. § 1.164–3(e)(1)), defined the old term "sales tax" which no longer appeared in the statute and thereby sought to narrow the statutory provision.

The new statutory provision, as mentioned, contained a definition of "general sales tax" which would seem to have been sufficient without any interpretation. This definition in the Act was thus substituted for the prior mere "sales tax" and for its reference to "tangible personal property." The statutory definition of a "general sales tax," as a new term, appeared as I.R.C. § 164(b)(2)(A):

> "The term 'general sales tax' means a tax imposed at one rate in respect to the sale at retail of a broad range of classes of items."

This broad and general definition was in response to the great variations among state sales taxes, general sales taxes and gross receipts taxes mentioned above. The intent to cover most all possible transactions is apparent from the language.

In contrast, Treasury Regulations carried forward the old definition of "sales tax" (not "general") to limit it to sales of tangible personal property. The Regulation defines a "sales tax" as a tax on sales of *tangible personal property* and then defines "general sales tax" as a "sales tax" imposed at one rate on a variety of classes of items. It thereby inserts the "tangible personal property" requirement and equates "general sales taxes" with "sales taxes," a term no longer in the statute. The Commission thus asserts in this action that the house sale was under its definition not of tangible personal property and disallowed the deduction.

In the House Report on the statutory change, it appears in the tabulations that it was intended to include gross receipts taxes as "general sales taxes." (H.R.Rep. No. 749, 88th Cong. 1st Sess. 48.) There are really no explanations in the committee reports as to the reason for the change in terminology. It would appear none were needed. The term itself with the definition was clear and sufficient. It was broader than the previous bare "sales tax" and inconsistent therewith. Thus there may not have been reasons expressed for the change, but a substantial change was made. The wording and definitions are much different. Why would the provisions have been changed if no change in consequences was intended but the statute was amended?

As mentioned, the Regulation was adopted in 1964. The section of the statute to which it related was amended by Congress several times after the Regulation became effective to add or repeal particular subsections as to unrelated matters. There appears to be no reenactment of the section. However, the actual impact of the Regulation and its purported meaning, insofar as the issue is presented by this case, was not revealed until two subsequent events took place. The first was the change in the New Mexico statute from a typical sales tax to the gross receipts tax in 1966, and secondly, and of more significance, was the issuance of Revenue Ruling 82–173 which in 1982 actually applied, *and for the first time,* the narrow interpretation of the Regulation to new house sales in New Mexico. Before the Ruling the IRS practice was to allow as a sales tax deduction, under the Regulation, the New Mexico gross receipts tax on new houses. There was thus before then a frequently applied deduction contrary to the Revenue Ruling. The issue in this case was thus new as there was before no "long-standing" interpretation except to the contrary.

The issue in this appeal arose not with the issuance of Regulation § 1.164–3 in 1964, as it brought about no change in the deductibility of the New Mexico gross receipts tax. Instead it was the official interpretation of the Regulation by Revenue Ruling 82–173 coming years later which sought to read out the statutory definition of "general sales tax" in the statute.

There is no apparent reason why, in the Regulations, Treasury reinserted the previous tangible personal property limitations removed by Congress. The fact of this obvious substitution is in itself reason to invalidate the interpretive Regulations. Treasury used its general authority to issue the interpretive regulation, I.R.C. § 7805(a), as there was no specific authority to interpret in the statute concerned in the legislation. Thus we must examine the interpretation under *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792:

"The framework for analysis is refined by consideration of the source of the authority to promulgate the regulation at issue. The Commissioner has promulgated Treas.Reg. § 1.1563–1(a)(3) interpreting the statute only under his general authority to 'prescribe all needful rules and regulations.' 26 U.S.C. § 7805(a). Accordingly, 'we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision.' "

*See also Rowan Cos. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814, and Estate of *Boeshore v. Commissioner,* 78 T.C. 523.

Under the prevailing standard of review, the interpretative regulation is valid only to the extent it "harmonizes with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519. This the Regulation under consideration does not do. *See General Motors Corp. v. United States,* 283 F.2d 699, 151 Ct.Cl. 366, where language from a superseded statute was sought to be included by a Regulation.

Under these circumstances Treasury Regulation § 1.164–3 and the Revenue Ruling cannot be valid as an attempted redefinition of the statutory term "general sales tax" to limit deductions to sales of tangible personal property, and to so prevent the deduction of the state's gross receipts tax on new home sales.

In the circumstances of this case the New Mexico gross receipts tax is imposed on the part of the receipts from the sale of the new house attributable to improvements constructed by the seller on real property in the course of his business. N.M.Stat.Ann. § 7–9–53(A). Thus the value used is that of the *completed structure* so constructed. The materials and labor were combined and obviously have become part of the real estate under traditional real property doctrines.

The statutory application of the New Mexico gross receipts tax thus ignores the property law doctrines in placing the tax on

the sale and on the value of the bundle of materials and services which had become the house. This is done regardless of the value or character of the added individual items of property or services initially or at the time of sale. There appears to be no reason why the legislature could not so define the subject of the tax and ignore the property law aspects.

The state statutory provision for the use of non-taxable transactions certificates as was done here demonstrates this conclusion. Thus the contractor using such certificates in the purchase of materials is to collect and report the tax on the sale of the constructed project. N.M.Stat.Ann. § 7–9–51(B)(1) and (2), § 7–9–52(B)(1). This provision thus permits a planned delay in the payment of the tax until the house is sold and to shift the incidence of the tax to the buyer of the house. The seller collects the tax from the buyer on the sale. It further uses an entirely different basis for the assessment of the tax, as mentioned above, and places it on a transaction and sale of an entirely different item of property.

The gross receipts tax was here imposed on the completed building without any need for characterization as to real or personal property, and without regard to real property law. The subject the incidence is clearly designated. The incidence of a tax such as this is ordinarily determined by local law. *Petty v. Commissioner,* 77 T.C. 482.

The New Mexico tax was accepted by the IRS as a "general sales tax" under I.R.C. § 164(a)(4) which related to deductions. Rev.Rul. 82–173, 1982–42 I.R.B. 5. In my view, it was well within the statutory definition of a "general sales tax" contained in the changes made by Congress in 1964, above described. Here applied it was a tax imposed at one rate in respect to the sale at retail "of a broad range of classes of items."

The state tax here concerned was thus deductible under the statute.