George H. ISAACS, Frank Pavano, James Agalloco and Abraham Frosch, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,

v.

Otis R. BOWEN, as Secretary of the Department of Health and Human Services, and William L. Roper, as Administrator of Health Care Financing Administration, Defendants.

No. 87 Civ. 6979 (WK).

United States District Court, S.D. New York.

Jan. 28, 1988.

On Motion for Reargument March 17, 1988.

Whitney North Seymour, Jr., Brown & Seymour, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Chad A. Vignola, Sp. Asst. U.S. Atty., Civ. Div., for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This action challenges policies adopted by the defendants in the wake of Congress' recent amendment of the appeal procedures available to dissatisfied Medicare claimants. *See* Omnibus Budget Reconciliation Act of 1986, Pub.L. 99–509, § 9341, 100 Stat. 2037 (1986), *amending* Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (the "Medicare Act"). Specifically at issue in this lawsuit are the procedural steps required of claimants under Part B of the Medicare Act who wish to appeal determinations made with respect to their claims.

Plaintiffs Isaacs and Pavano originally asserted their claims individually, but recently amended their complaint to assert a class action and to name two additional representative plaintiffs. The case is currently before us on plaintiffs' motion for a preliminary injunction and on defendants' cross-motion to dismiss. At oral argument on these motions, we indicated our inclination to deny a preliminary injunction, and obtained the consent of both parties to treat plaintiffs' motion as one for summary judgement and permanent injunctive relief. We indicated that, should we rule in plaintiffs' favor, we would grant a stay of any injunctive relief pending review by the Court of Appeals. The parties agreed that a final judgement could be entered on the submissions made thus far, and were of the view that they would be able to dispose of the issue of class certification by stipulation. For the reasons stated below, we grant in part each of the motions before us.

## FACTUAL BACKGROUND

The Medicare Act is divided into two separate benefits programs. Part A, 42 U.S.C. §§ 1395c–1395i, the primary benefits component, provides major medical coverage for hospital care and related post-hospitalization services, and is funded out of Social Security taxes. Part B, 42 U.S.C. §§ 1395j–1395w, is a voluntary program of supplemental medical insurance which partially covers outpatient care, laboratory testing and ancillary medical services. Under Part B of the Medicare Act, the defendant Secretary is authorized to contract with private insurance carriers to administer the claims process. 42 U.S.C. § 1395u. The insurance carriers review claims to determine whether the services are "medically necessary," whether the charges are "reasonable," and whether the claims are otherwise payable under Part B, using standards set out in the Medicare Act and in regulations and guidelines promulgated by the Health Care Financing Administration ("HCFA"), the agency within the Department of Health and Human Services which administers Medicare. *See* 42 U.S.C. §§ 1395u(b)(3) and 1395y(a); 42 C.F.R. §§ 421.200 and 405.501 *et seq.*

Any claimant dissatisfied with the carrier's initial determination may request review by the carrier, 42 C.F.R. § 405.807 *et seq.* If, after such internal review, the claimant still disputes the determination, and if the amount in controversy exceeds

$100, the claimant may seek further review. If the amount in controversy is between $100 and $500, such review is limited to a hearing, statutorily entitled a "fair hearing," conducted by a hearing officer designated by the private insurance carrier. 42 U.S.C. § 1395u(b)(3)(C) (as amended). It is the nature of the review afforded to Part B benefit disputes in *excess* of $500 that is at the core of the dispute in this lawsuit.

Until 1986, the law required that claims administration contracts with private carriers provide for the conduct of a "fair hearing" by the carrier "in any case where the amount in controversy is $100 or more." 42 U.S.C. § 1395u(b)(3)(C) (amended 1986). Under the pre–1986 scheme, such a "fair hearing" was the only type of review available to Part B claimants who disputed the amount of benefits determined by the carrier, no matter what may have been the magnitude of the dispute. The "fair hearing" officer's determination as to the amount of benefits payable was final and unreviewable; only a determination as to *eligibility* for benefits was reviewable by the defendant Secretary. 42 U.S.C. § 1395ff(a) (amended 1986); *United States v. Erika, Inc.* (1982) 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12.

By contrast, with respect to claims under Part A of the Medicare Act, both pre- and post-1986 law has entitled claimants with benefits disputes in excess of $100 to proceed directly to a hearing before an independent Administrative Law Judge ("ALJ") designated by the defendant Secretary, and has entitled those with disputes in excess of $1000 to seek judicial review of an adverse ALJ decision. 42 U.S.C. 1395ff(b)(2)(A) (as amended).

During 1985, both houses of Congress held hearings on the Medicare appeals process, some of which focused on the Part B "fair hearing" scheme. The testimony at these hearings revealed considerable dissatisfaction with this scheme, particularly with regard to the built-in conflict of interest held by the carrier hearing officers, the frequency of unexplained discrepancies and arbitrariness in their determinations, and the constraints on their power to correct inequities in claim adjustment arising earlier in the carrier claim review process. Frequent criticism was also directed at the apparent unfairness of having "fair hearings" be the arbitral forum of last resort for Part B claims. *See, e.g., Medicare Appeals Provisions: Hearings on S.1158 Before the Subcomm. on Health of the Senate Comm. on Finance,* 99th Cong., 1st Sess. 188–194, 229–233, 385–391 (1985) (statements of American Bar Association, National Senior Citizens Law Center and National Association of Medical Equipment Suppliers, respectively); *Health Financing: Hearings on H.R. 2864 Before the Subcomm. on Health and the Environment of the House Comm. on Energy and Commerce,* 99th Cong., 1st Sess. 458 (1985) (statement of American Association of Retired Persons). These concerns were summarized in the House report that accompanied the resulting legislation:

> Numerous concerns have been expressed by beneficiaries about the fairness and adequacy of the Part B appeals process. Some have expressed the concern that the hearing officers are not properly qualified or are not objective, because many of them are former employees of the carrier or because their continued service as hearing officers may depend on the carriers' being satisfied with the decisions they render. Other concerns deal with the way hearings are conducted, including the beneficiaries' inability to produce evidence or to challenge the hearing officers' decision rules or his reliance on unidentified experts and consultants.

H.R.Rep. No. 99–727 at 95, *reprinted in* 1986 U.S.Code Cong. & Admin.News at 3607, 3685. Congress sought "to resolve these concerns by establishing an appeals procedure under Part B *that is modeled after that available under Part A."* *Id.* (emphasis added).

In the ensuing legislation, Congress amended the Part B hearing procedures in two ways. *See* Pub.L. 99–509, § 9341, *supra.* First, although Congress continued to require that contracts with carriers provide for "fair hearings," it altered the amount-in-controversy language to include a maximum as well as a minimum dollar amount. The pertinent section now reads:

Each such contract shall provide that the carrier ... will establish and maintain procedures pursuant to which an individual enrolled under this part will be granted an opportunity for a fair hearing by the carrier, in any case where the amount in controversy is at least $100, *but not more than $500 ...*

42 U.S.C. § 1395u(b)(3)(C) (as amended) (emphasis added). Second, Congress amended the section of the Medicare Act (applicable to both Part A and Part B) which sets the parameters for the availability of hearings before independent ALJs and for the availability of judicial review. 42 U.S.C. § 1395ff(b)(2)(B) (as amended). As noted above, neither ALJ hearings nor judicial review were previously available to Part B claimants who disputed the amount of benefits granted. The statute now provides for hearings before ALJs on Part B benefits disputes where the amount in controversy is $500 or more, and—as is the case with Part A claims—for judicial review of such disputes where such amount exceeds $1000. *Id.*

In April 1987, the defendants promulgated an amendment to the *Medicare Carrier Manual,* HCFA's principal policy guide for claims adjustment by carriers, making the carrier "fair hearing" a *"prerequisite* for an ALJ hearing" on all Part B claims, no matter how great the amount. *Medicare Carrier Manual* ¶ 12105(B) (emphasis added). In other words, regardless of the amount in controversy, HCFA regulations now require all Part B claimants to undergo a "fair hearing" before pursuing further appeals. In addition, *Medicare Carrier Manual* ¶ 12015(B) provides that

"[i]f less than $500 is in controversy following the carrier hearing officer's decision, no further appeals are available." *Id.* Defendants assert that authority to institute such limitations is found in the general power delegated to them to implement the Medicare Act, and, more specifically, in 42 U.S.C. § 1395ff(a), which, *inter alia,* allows the Secretary to make determinations of Part B benefits "in accordance with regulations prescribed by him."

■ The instant plaintiffs, dissatisfied Part B claimants who have amounts in dispute in excess of $500 and who have requested ALJ hearings, assert that the defendants' policy contravenes Congress' intent in amending the Medicare Act, which—they assert—was to restrict the use of "fair hearings" to claims between $100 and $500 and to provide direct access to an ALJ for claims involving greater amounts.[1]

## DISCUSSION

The question presented can be simply stated: Did the Congress—as plaintiffs contend—intend to limit Part B "fair hearings" to amounts in dispute under $500 and give claimants with disputes involving higher amounts direct access to an ALJ, or did it—as defendants suggest—intend to permit claimants with disputes involving amounts in excess of $500 to be subjected to a two-tiered hearing process?

We find the interpretation advanced by plaintiffs to be correct. Beginning with the language of the amendments, we cannot discern a rational reason for Congress to have inserted the phrase "but not more than $500" into the statutory provision for "fair hearings," § 1395u(b)(3)(C), if it did

---

**1.** Plaintiffs also challenge the legality of a purported policy decision made by the defendants to conduct the ALJ hearings contemplated by the new amendments by telephone, with a panel of 42 ALJs stationed in Baltimore, Maryland. Although no rules regarding telephone hearings or centralization of ALJs have yet been promulgated, defendants represent that the defendant Secretary will shortly be filing a Notice of Proposed Rulemaking in order to solicit public comment, and that the proposed regulations will provide for voluntary telephone hearings. Plaintiffs assert that the contemplated procedures (along with the alleged, but unsubstantiated, intentions of defendants to hire the new ALJs from among the ranks of carrier hearing officers) will further interfere with their newly-created rights under the Medicare Act.

As to these other challenged policies, we agree with defendants that the complaint does not present a "case or controversy" ripe for judicial determination, because HCFA "has not announced any rule nor does the complaint allege that any rules have been put into effect with legal consequences flowing from them." *Seafarer's Internat'l Union v. United States Coast Guard* (2nd Cir.1984) 736 F.2d 19, 27. We therefore dismiss the complaint insofar as it challenges these other alleged policies, without prejudice to renewal at some future date, when and if there has been final agency action that results in a justiciable controversy.

not intend to place a ceiling on the magnitude of cases which would undergo such hearings. The insertion of such a ceiling, where none previously existed, hardly suggests an intent to make optional to the defendant Secretary a further regulatory requirement of "fair hearings" for amounts in excess of the ceiling. Of further significance, the monetary ceiling here inserted is the same as the minimum amount for access to an ALJ hearing under § 1395ff(b)(2)(B), enacted pursuant to the same amending legislation. This strongly suggests an intent to have one type of review pick up where the other leaves off, and to avoid precisely the duplication that the defendants' new regulations create.

Yet perhaps the best means of determining whether plaintiffs' or defendants' interpretation most closely effectuates Congressional intent is to see which better implements Congress' expressed goal of "modelling" the new procedure "after that available under Part A." H.Rep. 99–727, *supra.* As noted above, the Part A "model" consists of an administrative hearing before an ALJ when the amount in dispute exceeds $100, with an opportunity for judicial review if the amount in dispute remains in excess of $1000 after the ALJ hearing. There is no provision for a "fair hearing" by a designee of the carrier.

Had Congress followed the Part A procedure completely it would have wholly eliminated "fair hearing" officers, since—as we have just noted—any Part A claimant entitled to a hearing has direct access to an ALJ. What apparently happened, however, is that while Congress was impressed with the criticism leveled at the "fair hearing" process by the American Bar Association and other groups, it was also persuaded by advocates of the status quo that it would be too expensive to institute the proposed reforms with respect to minor claims. Under plaintiff's interpretation, Congress retained the "fair hearings" procedures for claims of under $500, in spite of the complaints voiced, to provide claimants in this category with at least some avenue to a hearing, but applied the ALJ-*cum*-judicial-review "model" to all other Part B claims. This would, to the extent possible, model the new procedure "after that available under part A."

Defendants' interpretation, on the other hand, would impute to Congress an intent to adopt a hybrid procedure involving two tiers of factual hearings prior to judicial review. This is not only an anomaly having no relation to the Part A model, but amounts to a procedural obfuscation unparalleled—as far as we know—in the annals of bureaucracy. In brief, it seems apparent that the defendants were highly displeased with the spectacle of having Congress give heed to the critics of the status quo, and called upon all the bureaucratic ingenuity at their command to abort the solution that Congress adopted. They cannot be allowed to succeed in this tactic.

We accordingly hold that Congress, by its 1986 amendment of the Part B procedures, intended to foreclose the use of carrier "fair hearings" for claims where the amount in controversy is more than $500, and that the "prerequisite" promulgated in *Medicare Carrier Manual* ¶ 12015(B) is in violation of 42 U.S.C. §§ 1395u(b)(3)(C) and 1395ff, as amended. The defendants will be permanently enjoined from implementing the provisions of *Medicare Carrier Manual* ¶ 12015(B) and from promulgating any other prerequisite to ALJ review inconsistent with the statutory amendments as here interpreted.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction is deemed to be one for summary judgment and is granted insofar as it seeks an injunction against implementation of Medicare Carrier Manual ¶ 12015(B) or any similar requirement. Defendants' motion to dismiss is granted with respect to the remaining claims for relief. Let plaintiffs submit an appropriate judgement on ten (10) days notice.

SO ORDERED.

## ON MOTION FOR REARGUMENT

Having granted summary judgment to the plaintiffs by Memorandum & Order of January 28, 1988, this case is back before us on the Government's motion for reargu-

ment of that order, based on events that occurred in Congress in late 1987 which apparently, albeit puzzlingly, did not come to the Government's attention until after that order's issuance. In brief, the Government has brought to our attention that the amendments to the Medicare Part B appeals procedures enacted in the Omnibus Budget Reconciliation Act of 1986 were revisited by Congress in its analogous legislative vehicle for 1987. Two significant circumstances accompanied this new legislation. First, Congress changed the phrasing of the statutory ceiling for "fair hearings" contained in 42 U.S.C. § 1395u(b)(3)(C), upon which we had substantially based our January 28 ruling, from "not more than $500" to "less than $500". H.R. 3545, 100th Cong., 1st Sess., § 4085(i)(5), 133 CONG.REC. 12,141 & 12,286. Second, although undoubtably aware of the "fair hearing" "prerequisite" for all Part B appeals which the defendants have unilaterally grafted onto the 1986 amendments, Congress did not avail itself of the opportunity expressly to reject the defendants' interpretation of those amendments, but instead authorized the General Accounting Office ("GAO") to conduct a cost-effectiveness study of the defendants' across-the-board "fair hearing" "prerequisite." *Id.*, § 4082(d), 133 CONG.REC. 12,140 & 12,286.

 As an initial matter, we agree with plaintiff that the alteration of "not more than $500" to "less than $500" allows the "fair hearing" and ALJ avenues of appeal for Part B claims to dovetail more perfectly. However, the import of this alteration for present purposes is not its meaning but its evidentiary significance: this change, along with the authorization of the GAO study, clearly indicate that Congress expressly and consciously reconsidered the 1986 amendments in its 1987 legislation, and not only passed up an opportunity to overrule the defendants' interpretation, but evinced a possible willingness to codify it. Notwithstanding our rejection of the defendant's interpretation of the 1986 amendments in the January 28 Order, to which we adhere, the circumstances accompanying the 1987 legislation do lend the force

and effect of law to the defendants' interpretation, unless and until Congress otherwise legislates. *United States v. Sheffield Board of Commissioners* (1978) 435 U.S. 110, 134, 98 S.Ct. 965, 980, 55 L.Ed.2d 148; *Casey v. Commissioners of Internal Revenue* (10th Cir.1987) 830 F.2d 1092, 1095. This is obviously a dispute which, for the time being, must be left to the political branches to resolve. Further, as a purely practical matter, we fail to see how the GAO would be able to conduct a cost-effectiveness study if the very procedures which it is to study were to be enjoined.

Accordingly, the Government's motion for reargument is granted, the injunction against further implementation of Medicare Carrier Manual ¶ 12015(B) contained in our Memorandum & Order of January 28, 1988 is vacated, and the Government's motion to dismiss the complaint is in all respects granted.

SO ORDERED.